# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | ) | CIVIL ACTION NO.  17-1023 |
| | ) | |
| Plaintiff/Counterclaim-defendant, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

## OPINION

### I.  Introduction

On November 11, 2019, the special master entered a comprehensive, 22-page report and recommendation ("R&R") on cross-motions for summary judgment with respect to the existence of an implied license ("R&R #490") (ECF No. 490).  On November 12, 2019, the special master entered a thorough, 32-page R&R on motions for summary judgment on the issues of "no anticipation" and "no non-infringing alternatives"  ("R&R #491") (ECF No. 491).  The special master's R&Rs addressed the parties' summary judgment motions at ECF Nos. 351, 366, 371 and 374.

The special master's R&Rs were issued after extensive briefing and oral argument, which the court attended.  (Transcript, ECF No. 486).  The special master and court also reviewed the parties' post-argument filings regarding the Federal Circuit Court of Appeals' Appeal No. 18-1462 (ECF Nos. 487-489).  Numerous objections to the special master's R&Rs (accompanied by more extensive briefing) are pending.  (ECF Nos. 492, 495-497, 499-503, 505-513, 515-516, 519).  PPG objects to R&R #490 and objects in part to R&R #491 regarding the "no noninfringing alternatives" issue.  Sherwin Williams objects in part to R&R #490, and objects in

part to R&R #491, regarding the "no anticipation" issue.[1]  Also pending is PPG's motion for entry of final judgment pursuant to Rule 54(b) and stay pending interlocutory appeal, which is fully briefed.  (ECF Nos. 493, 494, 508, 522).  On March 16, 2020, the court heard oral argument on the parties' objections to the R&Rs in accordance with Federal Rule of Civil Procedure 53(f).  The objections will be reviewed de novo and addressed seriatim.  Finally, PPG's motion for entry of a final judgment and a stay will be addressed.

II.  Objections to the R&Rs

A.  R&R # 490 -- Implied License

The parties filed cross-motions for summary judgment regarding the effect of a unilateral covenant not to sue[2] issued by Sherwin Williams on November 15, 2016, that mooted an appeal of a reexamination of the '047 and '876 patents (the "Parent Patents") in the Court of Appeals for the Federal Circuit.  The disputes between Sherwin Williams and PPG involve a "family" of related patents involving BPA Non-Intent ("BPA-NI") interior beverage can coatings.  The '047 and '876 patents at issue in the Court of Appeals for the Federal Circuit are "parent" patents. The "child" patents at issue in this case are '663, '012, '763, '900 and '854 (the "Asserted Patents").

As the special master explained, this litigation involving the Asserted Patents was ongoing at the time Sherwin Williams issued the covenant not to sue.  Sherwin Williams sent the covenant not to sue to PPG and in the cover letter to PPG enclosing the covenant not to sue, Sherwin Williams expressly stated: "no license rights to the Asserted Patents are being conveyed to PPG."  R&R #490 at 4-5.  Sherwin Williams informed the Court of Appeals for the Federal

---

[1] Sherwin Williams' objections are styled as motions to modify the R&Rs.
[2] Sherwin Williams' predecessors in interest issued a "covenant not to sue PPG Industries, Inc. or any of its subsidiaries or customers (collectively, "PPG") for infringement of any claim of the '047 or '876 patents as of the date of this Covenant Not to Sue based on PPG's manufacture, importation, use, sale and/or offer for sale of any currently existing products or use of methods and of prior existing products or prior use of methods."  (ECF No. 74-1).

Circuit about the covenant not to sue and noted that it wanted to keep the litigation on the Asserted Patents "moving forward on its current schedule" and had decided not to include the Parent Patents in this litigation. R&R #490 at 4 & n.5.

The special master recommended that Sherwin Williams' motion (ECF No. 374) be granted and PPG's motion (ECF No. 351) be denied. The special master thoroughly reviewed the convoluted procedural history and the decisions relied upon by the parties, including *TransCore LP v. Electric Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009) ("*TransCore*"), *General Protecht Group v. Leviton Manufacturing Co.*, 651 F.3d 1355 (Fed. Cir. 2011) ("*General Protecht*"), and *ICOS Vision Systems Corp. N.V. v. Scanner Technologies Corp.*, No. 10 CIV. 0604 PAC, 2012 WL 512641 (S.D.N.Y. Feb. 15, 2012) ("*ICOS*"). The special master reasoned that no implied license was granted because there was no bargained-for consideration between PPG and Sherwin Williams. The special master explained that the doctrine of implied license would not be extended under a promissory estoppel theory to cover the circumstances of this case, in which the parties did not participate in any settlement negotiations and PPG did not act in reliance on an alleged implied license. In the alternative, the special master recognized that even if PPG could meet its burden, Sherwin Williams could defeat the presumption of an implied license by demonstrating a "clear indication of mutual intent" that it was not granting an implied license for the patents at issue in this litigation. The special master observed that determining "mutual intent" was difficult because the decisions that analyzed that concept arose in the context of a bilateral agreement, rather than an unilateral covenant not to sue. The special master concluded that Sherwin Williams could not meet its burden to show mutual intent based on PPG's conduct in meeting deadlines in this litigation. R&R #490 at 19.

PPG objects to the R&R and contends that it obtained an implied license by legal estoppel as a result of the issuance of the unilateral covenant not to sue.  Sherwin Williams objects to the alternative portion of the R&R regarding mutual intent.

PPG's objections to R&R #490 essentially reiterate the arguments it presented to the special master, with more emphasis on consideration.  In addition, at the oral argument on March 16, 2020, PPG emphasized its view that any limits on the scope of the implied license must be contained in the covenant itself, rather than the cover letter or contemporaneous statements to the Court of Appeals for the Federal Circuit.  *See General Protecht*, 651 F.3d at 1361 (if the parties intend to vary the scope of an implied license, "it is their burden to make such intent clear in the license.").

The court concludes that the circumstances clearly show that no license, whether express or implied, was granted for the Asserted Patents.  License agreements can be drafted to convey different scopes of promises not to sue.  *General Protecht*, 651 F.3d at 1361.  If an express license is granted on a parent patent, a presumption arises that those products are impliedly licensed under continuation patents as well, absent clear mutual intent to the contrary.  *Id*.  The parties' intent is controlling and they are free to contract around an interpretive presumption that does not reflect their intentions.   *Id*.  The decisions examine "mutual intent" to determine whether a presumption of an implied license can be overcome because, in the context of a negotiated agreement, the contract provides the best evidence of the parties' mutual intent.  *See id.* at 1362 (discussing *TransCore*).

Here, the court must determine what is the "contract," i.e., the license, at issue.  Does it include the cover letter, which is a clear expression by the grantor that no license is being granted for the Asserted Patents?  The answer to that question is "yes."  It is a basic principle of interpretation that "[a] writing is interpreted as a whole, and all writings which are part of the

4

same transaction are interpreted together." <u>Restatement (Second) of Contracts</u> § 202(2); *accord*

*CCA Assocs. v. United States*, 667 F.3d 1239, 1250 (Fed. Cir. 2011) (recognizing that the Federal

Circuit Court of Appeals acknowledges the Restatement (Second) of Contracts § 202(2) rule that

"all writings that are part of the same transaction are interpreted together."); *Kroblin*

*Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107–08 (3d Cir. 1986) ("[W]here two

writings are executed at the same time and are intertwined by the same subject matter, they

should be construed together and interpreted as a whole, each one contributing to the

ascertainment of the true intent of the parties.").  The Third Circuit Court of Appeals has

commented: "As an additional aid to proper construction [of a contract], the court should

consider the situation of the parties, the attendant circumstances and the ends they sought to

achieve."  *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) (discussing Restatement

(Second) of Contracts § 202(2)).

     The text of Sherwin Williams' covenant not to sue refers only to the Parent Patents.[3]

Sherwin Williams' contemporaneous writing to PPG, i.e., the cover letter, makes it abundantly

clear that there was no license granted for the Asserted Patents.  Sherwin Williams stated in the

cover letter to PPG which enclosed the covenant: "no license rights to the Asserted Patents are

being conveyed to PPG." (ECF No. 74-1).  The contemporaneous cover letter must be construed

and interpreted together with the covenant not to sue.  The cover letter is a writing executed at

the same time as the covenant not to sue and is intertwined with the same subject matter as the

---

[3] The covenant not to sue was not negotiated or executed by both parties and contains no integration clause.  There is no preclusion on construing the contemporaneous writings together.  *Compare Kroblin Refrigerated*, 805 F.2d at 107-08 (construing contemporaneous agreements together, even when one agreement contained an integration clause), *with In re the Baptist Home of Philadelphia*, 525 B.R. 236, 242 (Bankr. E.D. Pa. 2014) (explaining that in determining whether a contract is fully or partially integrated, courts consider whether the contact contains a merger or integration clause, the length and detail of the contract, the formality of the setting, and whether the contract is a form).

covenant not to sue. The court must construe the contemporaneous writings – the cover letter and the covenant not to sue -- as a whole. *See Kroblin Refrigerated*, 805 F.2d at 107-08.

The attendant circumstances also reflect Sherwin Williams' intent and the ends it sought to achieve by issuing the covenant not to sue. Sherwin Williams stated in writing to the Federal Circuit Court of Appeals on November 15, 2016, that it was issuing a covenant not to sue limited to the Parent Patents. Sherwin Williams explained it decided not to include the Parent Patents in this litigation so it could keep the litigation about the Asserted Patents "moving forward on its current schedule."[4] (ECF No. 74-1). The continuation of this litigation is further compelling evidence that supports Sherwin Williams' position. *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081–82 (Fed. Cir. 1987) (that a lawsuit was ongoing indicates strongly that there was no intent to forfeit rights under the patents involved in that lawsuit). This court cannot recognize the grant of an implied license for the Asserted Patents because – construing the cover letter and the covenant not to sue as a whole -- Sherwin Williams expressly and clearly excluded the Asserted Patents from the license. Because this analysis differs from the special master's analysis of mutual intent, that portion of R&R # 490 is not adopted by the court.

In the alternative, the court agrees with the special master's conclusion that the implied license doctrine does not apply to the circumstances of this case. The legal estoppel doctrine applies to a "narrow category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *TransCore* 563 F.3d at 1279 (quoting *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc*., 103 F.3d 1571, 1581 (Fed. Cir. 1997)). The policy rationale underlying the doctrine is that a grantor who

---

[4] Sherwin Williams explained to the Federal Circuit Court of Appeals that its claims based on the Asserted Patents were different than claims based on the Parent Patents. (ECF No. 74-1).

has licensed a "definable property right for valuable consideration" should be "estopped from taking back in any extent that for which he has already received consideration." *Id.* It is PPG's burden, as the party asserting an implied license as a defense to infringement, to establish that an implied license exists. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999).

The covenant not to sue was <u>unilateral</u>, rather than the product of a mutual agreement or bargained-for exchange. Although PPG may have suffered a detriment and Sherwin Williams obtained a benefit from the covenant not to sue in the mooting of the pending litigation in the Federal Circuit Court of Appeals, the types of negotiations and reliance that may warrant creation of an implied license never occurred. Sherwin Williams is not trying to derogate from rights previously granted because it expressly advised PPG at the time the covenant not to sue was issued that it was not granting a license for the Asserted Patents. The court adopts the special master's analysis regarding the *TransCore*, *General Protecht* and *ICOS* decisions and the conclusion that the doctrine of implied license should not be extended to the circumstances of this case.

In its initial briefing, PPG relied heavily on language in the Court of Appeals for the Federal Circuit's decision in *PPG Industries, Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002 (Fed Cir. 2017) ("*Valspar I*"), for the proposition that a broader interpretation of the covenant is "law of the case." The court stated in *Valspar I*: "The breadth of Valspar's Covenant Not To Sue, absolving PPG (and its subsidiaries and customers) of any possible infringement of the **subject matter** of these patents, necessitates our conclusion that the case is moot." 679 F. App'x at 1005 (emphasis added). PPG's reliance on this statement to argue that it has an implied license covering the "subject matter" of the patent family, including the patents asserted in this case, is misplaced. In *Valspar Sourcing, Inc. v. PPG Industries, Inc.*, 780 F. App'x 917 (Fed.

Cir. 2019) ("*Valspar II*"), the Federal Circuit Court of Appeals recognized that a parallel district court litigation (i.e., this case) existed which did not include the patents at issue in the Federal Circuit and stated: "it was clear that this court's intent [in *Valspar I*] was to nullify the entire inter partes reexamination without any collateral effect on other litigation." *Id*. at 919, 922. In other words, the decision in *Valspar I* should not be interpreted as deciding that an implied license exists regarding the claims Sherwin Williams is pursuing in this case.

PPG's supplemental authority, *Cheetah Omni LLC v. AT&T Services, Inc*., No. 2019-1264, 2020 WL 578935, at *2 (Fed. Cir. Feb. 6, 2020), is distinguishable in two important respects. First, it did not involve a unilateral covenant not to sue and a cover letter expressly stating that a license was not being granted for other related patents. The parties in *Cheetah Omni* settled prior litigation by executing two agreements, a covenant not to sue and a license. The license broadly defined the licensed patents, to expressly include "grandparent" and "uncle" patents, and the issue was whether a "grandchild" patent was within the scope of the parties' agreement. *Id*. Second, although the parties were aware of the "grandchild" patent, it was not addressed in the license. One side argued that if the parties intended to *include* it, it would have been expressly named in the license, while the other side argued that if the parties intended to *exclude* it, they would have expressly done so. *Id*. at *3. The circumstances of this case are much clearer. As discussed above, Sherwin Williams specified that it was granting a covenant not to sue on the Parent Patents and contemporaneously stated in writing that it did not extend that covenant to the Asserted Patents.

In sum, Sherwin Williams did not grant PPG an implied license with respect to the Asserted Patents at issue in this case.[5] To the contrary, Sherwin Williams made clear in the

---

[5] The court also adopts the special master's recommendation, to which PPG did not object, that PPG's defense of judicial estoppel fails as a matter of law. (R&R #490 at 21).

cover letter, when issuing the unilateral covenant not to sue, that the covenant involved only the Parent Patents, and that Sherwin Williams intended to continue this litigation. PPG's objections to R&R #490 are denied.

B. R&R # 491

1. No anticipation

PPG contends that the Asserted Patents are invalid because they are anticipated by the prior art, including U.S. Patent No. 5,714,539 (the "Perez patent"). To anticipate, a single prior art reference must disclose every claim limitation as arranged in the asserted claims. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). PPG must ultimately prove anticipation by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Whether a prior art reference anticipates a patent claim is a question of fact. *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). At the summary judgment stage, all justifiable inferences must be drawn in favor of the nonmovant, PPG. *Semcon Tech, LLC v. Micron Tech., Inc.*, 660 F. App'x 908, 913 (Fed. Cir. 2016). Sherwin Williams contends that summary judgment is appropriate because there are no material disputes of fact. Specifically, Sherwin Williams argues that the Perez patent does not anticipate the Asserted Patents because it discloses a core-shell latex polymerized in water, not an organic solution. Sherwin Williams also argues that PPG's expert, Dr. Storey, admitted that a coating made with the claimed composition may or may not meet the testing limitation claims, which would preclude a finding of inherent anticipation as a matter of law. PPG argues, in response, that there are "battles of the experts" which create fact disputes on each of these issues.

In R&R #491, the special master recommended that Sherwin Williams' partial motion for summary judgment of no anticipation (ECF No. 366) be denied. The special master concluded that whether the Perez patent disclosed the claimed limitations as arranged in the Asserted Patents was a question of fact on which a reasonable jury could disagree. There are material issues of disputed fact about whether the use of organic solution polymerization would have been obvious to a person skilled in the art ("POSITA"). The special master further concluded that there were material fact disputes about whether the testing limitations were inherent performance characteristics of the claimed coating composition.

The court agrees with the special master's analysis. Both sides' experts agree that making the shell of a core-shell latex polymer by organic solution polymerization was well known in the art for almost 25 years prior to the time of the issuance of the Asserted Patents. *See Net MoneyIN*, 545 F.3d at 1369 ("Section 102 embodies the concept of novelty—if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is "anticipated" by the prior invention.").[6] Viewing the record in the light most favorable to PPG, a reasonable jury could conclude that the Perez patent disclosed all novel, patentable aspects of the Asserted Patents.

A reasonable jury could also conclude that the testing limitations (performance on global extraction, adhesion and metal exposure tests) were inherent characteristics of a coating with the disclosed claims. *In re Gleave*, 560 F.3d at 1334–35 ("anticipation is a question of fact, including whether an element is inherent in the prior art."). Sherwin Williams relies on its expert, Dr. Iezzi, to opine that a coating based on the Perez patent can meet all the compositional elements, but not the testing limitations. A jury would not be required to accept that opinion and

---

[6] The issue of anticipation may factually overlap with the issue of obviousness. *See id.* at 1371 ("differences between the prior art reference and a claimed invention, however slight, invoke the question of obviousness, not anticipation. *See* 35 U.S.C. § 103(a)").

may give it whatever weight it thinks is appropriate. *See* Third Circuit Model Jury Instruction 2.11; *Semcon*, 660 F. App'x at 914 (the fact that opposing party offered no contrary expert testimony on the issue of anticipation does not justify the issuance of summary judgment). In light of the full record, Dr. Storey's alleged admission in his deposition testimony[7] is not as dispositive on the issue of inherent anticipation as Sherwin Williams portrays. *See* ECF No. 368 ¶¶ 65-67). Dr. Storey opined that a POSITA would understand that if a prior art coating composition has the same compositional features as a claimed coating composition, then those coating compositions should be expected to exhibit the same performance characteristics. *See* ECF No. 425 ¶¶ 55-57. Indeed, Dr. Storey created a coating (the "Exemplary Perez Coating") for the specific purpose of demonstrating his opinion that a coating based on the Perez patent would inherently meet the testing limitations. *See Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) (it is an elementary principle of patent law that when a claim covers several compositions, "the claim is 'anticipated' if *one* of them is in the prior art.") (emphasis in original). In sum, the court adopts the special master's analysis and conclusion that the issue of "no anticipation" cannot be resolved at the summary judgment stage.

### 2. No non-infringing alternatives

---

[7] The portion of Dr. Storey's deposition testimony cited by Sherwin Williams provides: "A. This is very confusing. What I think I'm offering an opinion on is -- what I'm not offering an opinion on is whether or not – the part that you said whether or not it's possible that one could practice everything that is said here and not meet 35. That was your question I believe. Could you read back that original question that we're --
Court Reporter: Sure.
WITNESS: And I want to stop you after a portion of it.
(The Court Reporter reads back the requested section.)
A. I think I've answered that already with regard to one of the other things. And I'm just going to say -- because these are very confusing questions -- I'm just going to say that I know that claim
40 adds an additional limitation to claim 35, and so the assumption therefore would be that some -- it's further limiting. In other words that claim 40 is further limiting. So therefore in the universe of coatings that fulfill 35, some should be able to fulfill 40 and some may not. I believe that that is how claims are constructed." (ECF No. 368 ¶ 67, quoting Storey Deposition at 135-136).

The general principles governing damages in a patent infringement case were succinctly summarized in *In re Biogen '755 Patent Litigation*, 335 F. Supp. 3d 688 (D.N.J. 2018):

> A patent owner, upon a finding that a patent is infringed, is entitled to recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." 35 U.S.C. § 284. Having prevailed on liability, a patent owner may receive a reasonable royalty or lost profits. *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017). "To recover lost profits, a patent owner must prove a causal relation between the infringement and its loss of profits." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1240 (Fed. Cir. 2017) (internal quotation marks and citation omitted). In other words, the patent owner must show a reasonable probability that, "but for" the infringing activity, it would have made the additional profits enjoyed by the infringer. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017) ("[T]he fact finder's job is to determine what would the patent holder have made (what would his profits have been) if the infringer had not infringed."), *reh'g en banc denied*, 870 F.3d 1298 (Fed. Cir. 2017), *cert. dismissed*, No. 17-804, —— U.S. ——–, 139 S.Ct. 44, 201 L.Ed.2d 1122, 2018 WL 3978434 (U.S. Aug. 17, 2018).

> There is "no particular required method to prove but for causation" in patent cases. *Mentor Graphics*, 851 F.3d at 1284. One "useful, but non-exclusive" method to establish the patent owner's entitlement to lost profits is the test first articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). *Id*. (citation omitted). The *Panduit* test requires the patent owner to show: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made. *Id*. at 1285 (citing *Panduit*, 575 F.2d at 1156). Once the patent owner makes a prima facie showing under *Panduit*, it can be reasonably inferred that the lost profits claimed were caused by the infringing sales, and the burden shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

> The Federal Circuit has instructed that the "but for" inquiry "requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee 'would ... have made.'" *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (citation omitted). "[A] fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed." *Id*. at 1350-51. Consistent with this standard, this Court instructed the jury that it "must take into account, where relevant, alternative actions that [the infringer] would have undertaken had it not infringed." Final Jury Instructions at 43.

> "The goal of lost profit damages is to place the patentee in the same position it would have occupied had there been no infringement." *Mentor Graphics*, 851

F.3d at 1285. The question of legal compensability is one "to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." *Altana Pharma AG v. Teva Pharms. USA, Inc*., No. 04-2355, 2013 WL 12157873, at *6 (D.N.J. Jan. 11, 2013) (quoting *Rite-Hite*, 56 F.3d at 1546). While the availability of lost profits presents a question of law, *Rite-Hite*, 56 F.3d at 1544, whether acceptable non-infringing alternatives exist, which may reduce or preclude a lost profits damages award, presents a question of fact, *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc*., 976 F.2d 1559, 1577 (Fed. Cir. 1992) (citing *Radio Steel & Mfg. Co. v. MTD Prods., Inc*., 788 F.2d 1554, 1556 (Fed. Cir. 1986) ).

*Id*. at 724–25.

The alternative measure of damages, a reasonable royalty, is most commonly determined by constructing a hypothetical negotiation, which attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009). In other words, the factfinder must determine "the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began." *Id*. (citations omitted). The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement. In other words, if infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme. *Id*. In projecting a reasonable royalty, courts frequently consider the fifteen "Georgia Pacific factors," as did the damages experts for both sides in this case. *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).[8]

---

[8] The factors are:
1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

Sherwin Williams contends that it demonstrated the existence of a two-product market based on the *Panduit* factors, which justifies the recovery of lost profits damages. In its motion for summary judgment, Sherwin Williams argues that there is no evidence in the record from which a reasonable jury could reduce its lost profits or reasonable royalty damages based on two products identified in PPG's damages expert's rebuttal report.

The market for BPA-NI coatings was spurred in May 2015, when bisphenol A ("BPA") was added to a list of chemicals covered by Proposition 65, a California law that requires a consumer warning label. The key benefit of the Asserted Patents is that they provide a BPA-NI option for the beverage industry. Sherwin Williams markets a BPA-NI product called ValPure. PPG markets a BPA-NI product called Innovel HPS, which it admits infringes the Asserted Patents.[9] The two disputed alternative products at issue in Sherwin Williams' summary judgment motion are: (1) Akzo Nobel BPA-NI ("Akzo"); and (2) the Exemplary Perez Coating.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

[9] PPG maintains that the Asserted Patents are invalid. To reach the parties' arguments regarding damages, the court must assume that the Asserted Patents are valid.

Sherwin Williams argues that PPG should be precluded from discussing either product as part of a lost profits or reasonable royalty damages analysis.

In R&R #491, the special master recommended that Sherwin Williams' partial motion for summary judgment of no non-infringing alternatives (ECF No. 371) be granted. The special master noted it is undisputed that the Exemplary Perez Coating was not available in the market during the damages period and was created for this litigation. R&R #491 at 23-24; ECF No. 398 ¶¶ 45-52. The special master concluded that there was no evidence in the record of any actual sales or customers of an Akzo BPA-NI inside spray coating in the United States during the damages period. R&R #491 at 28 n.12. In sum, the special master concluded that neither of these products was commercially available or acceptable during the damages period.[10]

PPG disputes the burden-shifting analysis applied in the R&R and contends that Sherwin Williams did not meet its affirmative burden to demonstrate, as a matter of law, the absence of alternative products. PPG also argues that it was not required to disclose these products prior to its damages expert's rebuttal report. PPG contends that the record, including Sherwin Williams' own documents, shows that it was aware Akzo had a competitive product. In the alternative, PPG seeks a clarification that the special master's recommendation applies only in the "lost profit" calculation, not the "reasonable royalty" analysis.

The court agrees with the special master's analysis. On this record, there is not sufficient evidence that either the Akzo product or the Exemplary Perez Coating was an acceptable, available, non-infringing, alternative product in the market during the damages period. "To

---

[10] One aspect of the special master's R&R should be clarified. Page 30 of R&R 491 states: "There is no other commercially sold or available BPA-NI inside spray coating based on the Perez Patent during **any** time period." (Emphasis added). To be completely accurate, the R&R should read: "There is no other commercially sold or available BPA-NI inside spray coating based on the Perez Patent during the damages period." The court is aware that PPG made a coating for Coors in 1993-1995 based on the Perez patent (the "Coors product"). The Coors product is not at issue in the pending motion and is not an acceptable, available, non-infringing alternative. Dr. Storey testified that the Exemplary Perez Coating was not based on the Coors Product and it appears undisputed that the Coors product contained BPAs. ECF No. 398 ¶¶ 53-60.

prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp*., 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citing *Grain Processing Corp. v. Am. Maize-Prod. Co*., 185 F.3d 1341, 1353–55 (Fed. Cir. 1999)). If an alleged alternative product is not on the market during the accounting period, a court may reasonably infer that it was not available as a non-infringing substitute at that time. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) (quoting *Grain Processing*, 185 F.3d at 1353); *Zygo Corp. v. Wyko Corp*., 79 F.3d 1563, 1571 (Fed. Cir. 1996) ("It is axiomatic ... that if a device is not available for purchase, a defendant cannot argue that the device is an acceptable non-infringing alternative for the purposes of avoiding a lost profits award."). Because the coatings at issue are used in beverage cans, they must undergo a complicated and time-consuming qualification process. ECF No. 398 ¶ 22.

Sherwin Williams sufficiently showed "the negative," i.e., no other products existed in the market, through its interrogatory to PPG and deposition questions to PPG's corporate designee. Vague references by PPG that an Akzo product might exist will not suffice. ECF No. 398 ¶¶ 24-44. Speculation that PPG might have been able to design a non-infringing alternative based on the Perez patent will also not suffice. ECF No. 398 ¶¶ 46-47. It is undisputed that the Exemplary Perez Coating was never commercialized. Even though the existence of an alternative product exists is a question of fact, the special master correctly recognized that where there is no evidence to support the availability or acceptability of an alternative product during the damages period, summary judgment is proper. R&R 491 at 19-20. In *Conceptus, Inc. v. Hologic, Inc*., 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010), the court granted summary judgment of no non-infringing alternatives on a similar record and rejected an expert's reliance on conversations with personnel of the infringing party about alternative products. Based upon

the record, no reasonable jury could find an alternative product existed.

The special master's recommendation applies to both the lost profits and reasonable royalty analyses. Sherwin Williams' motion clearly sought summary judgment on both grounds. (ECF No. 371). Because there is insufficient evidence for a reasonable jury to find that the Akzo product or Exemplary Perez Coating were in the market during the damages period, it would be improper to refer to either product as a basis to calculate lost profits or a reasonable royalty.

As a practical matter, there is no real dispute with respect to this issue. Although the parties vigorously dispute their respective burdens to develop evidence regarding alternative products, the simple fact is that neither party did so and discovery is now closed. PPG's damages expert does not quantify an alternative "lost profits" or "reasonable royalty" analysis based on either the Akzo product or the Exemplary Perez Coating. *See* Milani Report at 50-51 (not factored into lost profits analysis); Milani Report at 78 (reasonable royalty opinion not quantitatively adjusted for alternative products). Asking a jury to adjust a damages award based on either product would confuse the issues and would be an exercise in pure speculation. *See* Federal Rule of Evidence 403.

The court recognizes that the "reasonable royalty" calculation necessarily involves some imprecision because it is determined by constructing a hypothetical negotiation. *Lucent*, 580 F.3d at 1324–25. The court is aware that both sides filed *Daubert* motions challenging the other side's damages expert, which the court denied without prejudice to reassert at the motion in limine stage. In adopting the special master's R&R with respect to no non-infringing alternative products, the court is not precluding the parties from reasserting other arguments regarding the opinions of the damages experts.

III. PPG's Motion to Certify/Stay (ECF No. 493)

PPG asks the court to enter a partial judgment on the implied license issue pursuant to Federal Rule of Civil Procedure 54(b)[11] and stay the case to allow PPG to pursue an interlocutory appeal. Sherwin Williams opposes that motion.

There is a longstanding federal policy against piecemeal appeals. *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980). "Certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court." *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012). The power conferred upon the trial judge by Rule 54(b) "should be used only in the infrequent harsh case as an instrument for the improved administration of justice." *Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958).

Rule 54(b) represents an attempt "to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006). To certify a final decision under Rule 54(b), the court must make two separate findings: (1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is "no just reason for delay." *Id.* (quoting *Curtiss–Wright*, 446 U.S. at 7–8).

The district court's decision is reviewed for abuse of discretion. *Id.* District courts should consider several factors when assessing whether there is a "no just reason for delay" under Rule 54(b):

> (1) the relationship between the adjudicated and unadjudicated claims;

> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;

> (3) the possibility that the reviewing court might be obliged to consider the same

[11] PPG does not expressly seek certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). To the extent that PPG seeks that relief, the court declines to certify an interlocutory appeal because it does not conclude that there is substantial ground for difference of opinion regarding the licensing issue.

issue a second time;

(4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; [and]

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 203.[12]

The court recognizes its discretion to enter a Rule 54(b) judgment in this case, but it declines to do so. A final disposition of a cognizable claim could be fashioned because PPG's license claims were originally filed in a declaratory judgment action, Civil Action No. 17-760, which was later consolidated with Civil Action No. 17-1023 (ECF No. 146), and not solely as affirmative defenses. After weighing the factors regarding "no just reason for delay," however, the court concludes that entry of a Rule 54(b) judgment is not warranted.

The first factor, whether the license claims can be separated from the remaining claims, weighs slightly in PPG's favor. The claims are legally separate, although PPG may try to assert the implied license as a defense to willfulness.

The second factor, whether future developments may moot the need for appellate review, weighs heavily in favor of Sherwin Williams. If PPG wins at trial on its invalidity arguments (or if the parties reach a settlement), the case will be over. PPG predicts that Sherwin Williams will likely appeal any decision that the patents are invalid and PPG would file a cross-appeal on the license issue. In that scenario, judicial efficiency will be promoted by a consolidated appeal, rather than the piecemeal appeals PPG is requesting. In addition, if the Federal Circuit Court of Appeals affirms a decision on invalidity, it would never have to reach the license issue.

---

[12] The parties dispute whether the decisions of the Federal Circuit Court of Appeals or the Third Circuit Court of Appeals are controlling, but pointed to no material differences in the applicable standard.

The third factor, whether the appellate court might be obliged to consider the same issue a second time, weighs slightly in favor of Sherwin Williams. Although the Federal Circuit Court of Appeals would not have to decide the same license issues multiple times, the policy against piecemeal appeals teaches that judicial economy is enhanced by considering all appellate issues in a case in one consolidated appeal.

The fourth factor, setoffs, is not applicable.

The fifth factor, miscellaneous considerations, weighs in favor of Sherwin Williams. An interlocutory appeal might not expedite the end of this litigation. This case is now trial ready. The court will be issuing a trial scheduling order, which bifurcates trial into first, a validity hearing and second, if necessary, a hearing on damages. Within months, PPG will have the opportunity for its day in court on validity and the Perez prior art – ironically, the very arguments that were mooted by the issuance of Sherwin Williams' unilateral covenant not to sue in connection with proceedings in the Federal Circuit Court of Appeals. PPG's proposal would delay this case, which is already three years old, and could cause additional legal expense. Economic and solvency considerations are not a factor.

The court acknowledges that if PPG were to prevail on an appeal of the license issue, the time and expense of a jury trial would be avoided.[13] But that consideration arises in all cases in which a party seeks to preserve a legal challenge to a district court ruling and cannot be sufficient to overcome the well-established policy against piecemeal appeals. In *Flynn & Emrich Co. v. Greenwood*, 242 F.2d 737 (4th Cir. 1957), the district court entered a Rule 54(b) judgment "solely to the question of whether Greenwood's conduct with defendant gave rise to estoppel whereby defendant had the right to use the patents." *Id*. at 738. The court of appeals concluded

---

[13] On the other hand, if PPG did not prevail on the appeal of the license issue, the case would remain in its current posture but for the additional delay and expense caused by the interlocutory appeal.

that although pled as a counterclaim, the estoppel argument was an affirmative defense over which the appellate court lacked jurisdiction. The court explained: "It would doubtless be convenient to the parties for us to pass upon this affirmative defense in advance of the trial of the case, but it would establish a precedent which might be very harmful in the administration of justice." *Id*. at 741.

In sum, PPG did not meet the difficult standard to justify a departure from the general policy against piecemeal appeals. The motion to enter judgment under Rule 54(b) and stay all proceedings pending an interlocutory appeal of the license issue will be DENIED.


IV. <u>Conclusion</u>

In accordance with the foregoing, the parties' objections to R&R # 490 will be granted in part and denied in part. Sherwin Williams' objections to the special master's conclusions about mutual intent in R&R # 490 will be granted for different reasons, and all other objections with respect to R&R # 490 will be denied. The parties' objections to R&R # 491 will be denied. The R&Rs will be adopted as the opinions of the court except as modified and supplemented herein. PPG's motion to certify/stay will be DENIED.

An appropriate order follows.

<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
Senior United States District Judge

Dated: March 18, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | ) | CIVIL ACTION NO.  17-1023 |
| | ) | |
| Plaintiff/Counterclaim-defendant, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

## <u>ORDER</u>

AND NOW, this 18th day of March, 2020, in accordance with the foregoing opinion, IT IS HEREBY ORDERED that the parties' objections to R&R # 490 are GRANTED IN PART AND DENIED IN PART.  Sherwin Williams' objections to the special master's conclusions about mutual intent in R&R # 490 are granted for different reasons set forth in the accompanying opinion, and all other objections with respect to R&R # 490 are DENIED.  The parties' objections to R&R # 491 are DENIED. The R&Rs are adopted as the opinions of the court except as modified and supplemented in the accompanying opinion.

IT IS FURTHER ORDERED that with respect to the implied license, PPG's motion for summary judgment (ECF No. 351) is DENIED, and Sherwin Williams' motion for summary judgment (ECF No. 374) is GRANTED.  Sherwin Williams' motion to adopt R&R #490 in part regarding the lack of an implied license and modify R&R #490 in part with respect to mutual intent (ECF No. 493) is GRANTED.

IT IS FURTHER ORDERED that with respect to "no anticipation," Sherwin Williams' motion for summary judgment (ECF No. 366) is DENIED.  PPG's motion to adopt R&R #491

regarding "no anticipation" (ECF No. 497) is GRANTED and Sherwin Williams' motion to modify R&R #491 with respect to "no anticipation" (ECF No. 502) is DENIED.

IT IS FURTHER ORDERED that with respect to "no non-infringing alternatives," Sherwin Williams' motion for summary judgment (ECF No. 371) is GRANTED and Sherwin Williams' motion to adopt R&R #491 with respect to "no non-infringing alternatives" (ECF No. 500) is GRANTED.

IT IS FURTHER ORDERED that PPG's motion for entry of judgment under Rule 54(b) and stay pending appeal (ECF No. 493) is DENIED.


A telephone status conference is scheduled for April 22, 2020 at 11:00 a.m., to discuss the scheduling of mediation and a bifurcated trial on the validity of the Asserted Patents.


/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge