IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | ) | CIVIL ACTION NO. 17-1023 |
| | ) | |
| Plaintiff/Counterclaim-defendant, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**OPINION**

I. Introduction

On August 19, 2020, the special master entered a report and recommendation ("R&R") (ECF No. 631), to address six motions in limine ("MIL"). The same day, the special master entered another R&R (ECF No. 632) on a motion filed by PPG Industries, Inc. ("PPG") to partially exclude testimony by Dr. Robert Iezzi ("Iezzi"), an expert witness on behalf of The Sherwin-Williams Co. ("Sherwin"). The special master's R&Rs were issued after extensive briefing and oral argument by video conference, which the court attended. (May 27, 2020 Transcript, ECF No. 553; Aug. 5, 2020 Transcript, ECF No. 630).

Numerous objections to the special master's R&Rs (accompanied by more extensive briefing) are pending (ECF Nos. 638, 639, 640, 642, 644, 645). The objections will be reviewed de novo and addressed seriatim. The parties have had ample notice and opportunity to be heard pursuant to Federal Rule of Civil Procedure 53(f)(1). This opinion will not address issues on which the special master requested additional input from the parties or which will be the subject of other R&Rs from the special master.

II. Objections to R&R #631

A. PPG MIL # 1 re non-technical copying evidence

PPG seeks to exclude "non-technical" copying evidence,[1] such as correspondence, meeting summaries and marketing slide decks, from the invalidity phase of the trial. Sherwin argues that this evidence is admissible to demonstrate copying as a secondary consideration in response to PPG's obviousness defense. The special master recommended that PPG's MIL #1 be denied, reasoning that Sherwin showed a sufficient nexus between the asserted claims and the copying. The special master concluded that *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1138 (Fed. Cir. 2019), was the controlling authority and was not persuaded by PPG's reliance on *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004), for the proposition that copying requires the replication of a specific product.

In *Liqwd*, the court explained that copying by a competitor is a relevant consideration in the objective indicia analysis; and the objective indicia analysis is a fundamental part of the overall obviousness inquiry. 941 F.3d at 1136-37. The court discussed *Iron Grip Barbell* at length, and explained that the infringement and copying inquiries are different, such that similarities between a patent and an accused product do not, on their own, establish copying. *Id.* at 37. The court concluded, however, that "where there is evidence of actual copying efforts, that evidence is always relevant." *Id.* at 1138.

In *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356 (Fed. Cir. 2012), the court explained that "a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis." *Id*. at 1364. The court concluded that the plaintiff failed to establish a nexus between the

---

[1] The exclusion of "technical" evidence from Iezzi is the subject of R&R #632.

copying and the merits of the claimed invention because parties in the chewing gum market typically copy any development by their competitors, patented or not. *Id*.

In this case, as the special master concluded, there is a sufficient nexus between the novel feature (i.e., a BPA-free can coating) and the alleged copying efforts, including synthesizing Example 7 of the '047 Patent. The court recognizes PPG's argument that "synthesizing" is different than "copying," but that is an issue of fact. It will be up to the jury to determine how much weight to give the non-technical copying evidence in resolving this case.

This aspect of R&R #631 will be adopted as the decision of the court, as supplemented herein. PPG MIL #1 will be denied.

B.  PPG MIL #2 and Sherwin MIL #1 -- Rardon confidentiality obligations

Dr. Daniel Rardon ("Rardon") worked for PPG from 1991-2000 and worked at Sherwin's predecessor (Valspar) from 2000-2005, where he was one of the named inventors of the Asserted Patents. In 2005, Rardon returned to PPG. The motions in limine involve an exchange of letters in January 2005 between in-house counsel for Sherwin and PPG about Rardon's confidentiality obligations to Sherwin (the "Rardon Letters"). Sherwin confirms that there are no breach of contract or trade secret claims in this case (ECF No. 630 at 8-9).

PPG seeks to exclude all evidence relating to Rardon's confidentiality obligations, as distracting the jury and inviting it to speculate about breach of contract/trade secret issues not in the case. Sherwin contends that the Rardon Letters are relevant to copying, which would be admissible in both the invalidity and willfulness phases of trial. Sherwin points to a document listing Rardon as a "key contributor" in its efforts to develop a BPA-free coating.

The parties agreed to a stipulation that the Rardon Letters were authentic, in lieu of a deposition of PPG's in-house counsel. The parties dispute the stipulation's provision that the

Rardon Letters "shall be admissible evidence for purposes relevant to the claims in this litigation and may be read to the jury during the trial of this action." (ECF No. 301). Sherwin asserts that in the stipulation, PPG agreed that the Rardon Letters may be read to the jury. In its MIL #1, Sherwin seeks to preclude PPG from eliciting testimony about statements made in the Rardon Letters, as an attempt to skirt the agreement PPG made to avoid a deposition of its in-house counsel. PPG argues that the Rardon Letters are not relevant to the claims in this litigation and focuses on the language in the stipulation that preserved its ability to make relevance objections.

The special master recommended that the Rardon Letters be excluded from phase I, but admitted in phase II. The special master reasoned that there was no nexus connecting the Rardon Letters to any technical features of the Asserted Claims. In contrast to the non-technical copying evidence, the special master concluded that the Rardon Letters were too far removed to be factually relevant in the invalidity phase. The special master noted that this recommendation moots Sherwin's MIL #1 with respect to phase I.

The court agrees with this part of the special master's analysis. As discussed above, Sherwin is entitled to introduce evidence of what Rarden actually did allegedly to copy the Asserted Patents. There is nothing in the Rardon Letters that constitutes evidence of copying. As Sherwin explained during the oral argument, it seeks to have the jury infer from the letters that PPG was so desperate to make a BPA-free coating that it reneged on its promise not to obtain information from Rardon. There are two problems with this effort: (1) Sherwin did not lay a foundation that Rardon violated any of the terms of his confidentiality agreement; and (2) the Rardon Letters would necessarily invite the jury to speculate about breach of contract/trade secret violations. By introducing the Rardon Letters into evidence, Sherwin would open the door to PPG rebuttal evidence about Rardon's compliance with his confidentiality obligations. An unnecessary and distracting side issue would ensue. In sum, pursuant to Rule 403, the Rardon

Letters and other evidence about his confidentiality obligations (in contrast to evidence about what Rardon actually did to assist the PPG effort) have little or no probative value with respect to copying, and whatever value they do have is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury.

The special master recommended that the Rardon Letters be admitted in phase II. The special master did not explain why he deemed the Rardon Letters to be relevant to willfulness. As explained above, the Rardon Letters do not have a nexus to copying. If Rardon did not violate any of the terms of his confidentiality obligations, the court does not perceive how the Rardon Letters or other evidence about those confidentiality obligations would impact the willfulness analysis. Unless Sherwin lays a proper foundation of a breach,[2] the Rardon Letters and confidentiality evidence would not be admissible under Rule 403, for the same reasons set forth above.

The court accepts the special master's recommendation about the Rardon Letters as to phase I and rejects it as to phase II. PPG's MIL #2 will be granted as to both phases. Because the Rardon Letters will not be admissible in either phase, Sherwin's MIL #1 will be denied as moot. The court need not address the special master's suggestion that the parties meet and confer about the identity of the PPG witness to offer rebuttal to the Rardon Letters.

C. Sherwin MIL #2 – Reliance on opinion of counsel

Sherwin seeks to preclude PPG from relying on an opinion of counsel defense to rebut willfulness. Sherwin seeks to define the term "opinion of counsel" broadly, to include court and

---

[2] Sherwin has not pointed to any evidence that Rardon violated his confidentiality obligations. The deposition testimony Sherwin cited in its motion (ECF No. 605 at 2) merely states that Rardon was at a meeting in 2008 or 2009 at which he informed other participants about a Valspar patent application for an inside spray coating that was based on earlier PPG technology Rardon worked on during his first stint at PPG. (ECF No. 247-3 at 32-35).

5

patent office filings that were prepared by attorneys.  Sherwin argues that PPG failed to comply with Local Patent Rule 3.9, did not identify legal opinions in response to its interrogatories about defenses to willfulness, and stated that it was not waiving the attorney-client privilege.  PPG argues that it is entitled to present public documentation relating to the patent reexamination and related appeals as evidence of its good faith belief that Sherwin's patents were invalid.

In a related dispute, PPG contends that its authenticating witness need not be an attorney, because it designated Dr. Retsch as its corporate representative on willfulness for the Rule 30(b)(6) deposition.  The parties engaged in a vigorous exchange in post-argument emails about whether Federal Rule of Evidence 602 (need for personal knowledge) applies to trial testimony by corporate representatives.

The special master recommended that PPG be permitted to introduce its public filings in the reexamination proceedings to rebut willfulness in phase II, provided the testimony is presented by a non-attorney.  The special master recommended that Sherwin MIL #2 be granted because it narrowly requested preclusion of opinions of counsel.  Sherwin points out in its objections that the reasoning in the R&R is inconsistent with granting its MIL.

The special master noted, but did not analyze, the distinction between public filings and privileged legal advice.  Local Patent Rule 3.9 applies when "any party [is] relying upon advice of counsel as part of a patent-related claim or defense . . . ."  PPG is not seeking to introduce into evidence privileged attorney advice it received about the strengths/weaknesses of Sherwin's patents.  Instead, it seeks to present evidence about the positions it has taken in public filings.

Public filings in a court or the patent office represent positions of the party.  The filing of a motion or brief in court is an act of the party which has consequences and is distinct from the attorney/client privileged advice the party received prior to the filing.  *See, e.g., Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n. 20 (3d Cir. 2006) ("Judicial admissions are

concessions in pleadings or briefs that bind the party who makes them."); *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."). The court "can take judicial notice of Patent & Trademark Office filings." *Taza SystemS, LLC v. Taza 21 Co., LLC*, No. 2:11CV073, 2013 WL 5145859, at *3 (W.D. Pa. Sept. 13, 2013) (citing *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011); and *Erbe v. Billeter*, 2006 WL 3227765 (W.D. Pa. Nov. 3, 2006)). The decisions Sherwin cites are not on point. In *In re EchoStar Comm. Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006), the company asserted the advice-of-counsel defense with respect to an investigation by in-house counsel and the court held that the waiver also applied to advice of outside counsel on the same subject. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005), involved an internal invention disclosure statement. Sherwin did not cite any decisions for the proposition that publicly filed documents constitute a subject-matter waiver of the attorney-client privilege. In sum, the court agrees with the special master that PPG can introduce its public filings to rebut the allegations of willfulness.

Dr. Retsch may be qualified to serve as the witness. The court is persuaded that the better rule, in the corporate setting, is that the personal knowledge requirement set forth in Federal Rule of Evidence 602 does not require first-hand observation or experience with respect to a corporate entity. *In re RFC & RESCAP Liquidating Tr. Action*, No. 013CV3451SRNHB, 2020 WL 504661, at *6 (D. Minn. Jan. 31, 2020). Corporations have a separate personhood and existence that may extend beyond the life span of any individual. PPG may demonstrate that Dr. Retch has personal knowledge of PPG's public filings through his work at the company or during his preparation to serve as the corporate 30(b)(6) witness on willfulness. PPG had a duty to convey that information to Dr. Retch. *See* Fed. R. Civ. P. 30(b)(6) ("The persons designated

must testify about information known or reasonably available to the organization.").

To be clear, PPG will be permitted to introduce its public filings as a defense to willfulness in phase II. That evidence must be presented by a non-attorney, such as Dr. Retsch. If PPG attempts to invite the jury to infer that it relied on the advice of counsel, the court will consider a limiting instruction or the introduction of rebuttal testimony. The court agrees with and adopts the special master's analysis, as supplemented herein, but not the recommendation. Sherwin's MIL #2 will be denied.

### D.  Sherwin MIL #3 – Foreign patent office proceedings

Sherwin seeks to exclude any evidence or testimony regarding proceedings before the European Patent Office ("EPO") from both phases of trial. In particular, Sherwin seeks to exclude the EPO decision of January 10, 2020 (ECF No. 615-1), which invalidated the European parallel to the Asserted Patents. PPG concedes that the EPO proceedings are not relevant to the invalidity phase (unless Sherwin opens the door), but argues that the EPO proceedings are relevant to willfulness.

The special master recommended that the EPO proceedings be excluded from phase I but permitted in phase II, provided that a competent witness exists. The special master did not separately address the January 10, 2020 EPO decision.

The court agrees with the special master in part. The EPO evidence will not be permitted in the invalidity phase. The EPO evidence of actions taken at the relevant time can be admitted during the willfulness phase. For the reasons set forth above, the public filings of the party do not constitute improper "opinion of counsel" evidence. The January 2020 decision had not been issued during the relevant willfulness time period (i.e., when PPG received notice of the Asserted Patents), and therefore, PPG could not have relied upon that decision. *Halo Elecs., Inc. v. Pulse*

*Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) ("culpability is generally measured against the knowledge of the actor at the time of the challenged conduct").  The January 10, 2020 decision will not be admissible unless Sherwin opens the door by contending that the positions PPG took in challenging Sherwin's patents were frivolous or not in good faith.

The portion of R&R #631 about the EPO evidence will be adopted as the opinion of the court, as supplemented herein, except as to the January 10, 2020 decision, which will not be admissible, unless Sherwin opens the door.

### E. Sherwin MIL #4 – References to bifurcation

All parties, and the court, agree that the jury will not be informed about phase II until after they have reached a verdict on phase I.  Sherwin is concerned about more subtle references to other remaining issues.  The special master did not decide this issue.  He instructed the parties to meet and confer about an appropriate instruction for the court to read to the jury.  The court will await that development.

### III. Objections to R&R #632 (Iezzi)

The court previously resolved several aspects of PPG's motion to exclude certain opinions of Iezzi, Sherwin's technical expert.  R&R #632 addresses an issue on which the special master requested additional briefing from the parties, namely, whether Iezzi should be precluded from offering at trial any opinions regarding PPG's alleged copying of Example 7 from U.S. Patent No. 7,592,047 (the "'047 Patent") based on the covenant not to sue granted by Sherwin.

9

The special master recommended that Iezzi be permitted to testify about his expert copying opinions, as follows:  in phase I, Iezzi can testify in rebuttal to PPG's claim of obviousness; and in phase II, Iezzi can testify about copying as it relates to willfulness.

Special master R&R #490 (ECF No. 490) provides the background relationships of the patent family.  As relevant to this issue, the '047 patent, one of the parent patents, was filed in 2005 and issued in 2009.  The alleged copying/synthesis of Example 7 of the '047 patent occurred in 2009.  The Asserted Patents, i.e., the "child patents" at issue in this case, were filed from 2012-2016 and issued from 2013-2018.  The same Example 7 is incorporated into each of the Asserted Patents.  Sherwin's covenant not to sue was issued in 2016.  The covenant stated that Sherwin

> covenant[s] not to sue PPG Industries, Inc. or any of its subsidiaries or customers (collectively, "PPG") for infringement **of any claim of the '047 or '876 patents** as of the date of this Covenant Not to Sue **based on** PPG's manufacture, importation, use, sale and/or offer for sale of any currently existing products or use of methods and of prior existing products **or prior use of methods**.

(Emphasis added).  PPG focuses on the "prior use" language and argues that in 2009, when the alleged copying occurred, it could only have infringed the '047 patent because the Asserted Patents did not exist.  In other words, PPG contends that the covenant covers its prior use of the methods in the '047 patent, including its copying of Example 7.

Sherwin focuses on the language in its covenant (and accompanying cover letter) that limits it promise to the '047 and '876 parent patents.  Sherwin contends that it is not breaking its covenant not to sue, because the same Example 7 is incorporated into the Asserted Patents  -- and it never promised not to assert claims based on the Asserted Patents.

The court agrees with the analysis and recommendations of the special master about the effect of the covenant not to sue.  In resolving the parties' summary judgment motions, the court determined that Sherwin's covenant not to sue was unilateral, and therefore, it was Sherwin's

intent that was controlling and no license was granted on the Asserted Patents. (ECF No. 530). Therefore, Sherwin may introduce evidence about copying Example 7 of the Asserted Patents, even though it covenanted not to sue PPG for copying the same Example 7 of the '047 Patent.

Iezzi will be permitted to testify about the copying evidence during phase I. There is a battle of the experts on obviousness. It will be a jury question about which expert to believe and how much weight to give the copying/synthesis evidence in determining obviousness and invalidity. The court adopts this portion of the special master's R&R, as supplemented herein.

Turning to phase II, PPG argued that its actions in 2009 in copying Example 7 cannot be evidence of willfulness in this case because the Asserted Patents did not exist at that time. The special master and Sherwin did not specifically address that argument.

Willfulness is measured at the time of the infringer's alleged conduct. *Halo Elecs*, 136 S. Ct. at 1933. The Federal Circuit Court of Appeals recognized in *State Industries, Inc. v. A.O. Smith Corp*., 751 F.2d 1226, 1236 (Fed. Cir. 1985) (denying claim of willful infringement based on a patent application), that: "To willfully infringe a patent, the patent must **exist** and one must have knowledge of it." (Emphasis added); *see SRI Int'l, Inc. v. Cisco Sys., Inc*., 930 F.3d 1295, 1309 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 1108 (2020) (vacating jury's verdict of willful infringement before infringer knew about the patent).

Sherwin is correct that in 2009, PPG had no idea that in 2016 it would receive a covenant not to sue on the '047 Patent.[3] By the same token, there is no evidence that in 2009, PPG knew that child patents would be issued. The earliest filing of an Asserted Patent was in 2012.

This potentially significant issue will be remanded to special master. The special master shall consider whether Sherwin will be permitted to introduce evidence in the willfulness phase, through Iezzi or otherwise, of PPG's copying actions taken before PPG knew that the Asserted

---

[3] Perhaps PPG willfully infringed the '047 Patent, but that conduct was the topic of the covenant not to sue.

Patents existed. This aspect of the special master's R&R #632 is not adopted.

In summary, R&R #632 is adopted in part, as supplemented herein, and remanded in part for further report and recommendation. Iezzi may testify about copying evidence in phase I in rebuttal to PPG's obviousness defense. The special master shall consider whether Sherwin may present evidence in phase II about copying that occurred before PPG knew the Asserted Patents existed.

IV. <u>Conclusion</u>

In accordance with the foregoing, special master R&R # 631 will be adopted in part as the opinion of the court as modified and supplemented herein, and will be rejected in part as follows: (1) with respect to non-technical copying evidence, PPG MIL #1 will be denied; (2) with respect to the Rardon Letters, PPG MIL #2 will be granted and the Rardon Letters will not be admissible in either phase of trial; Sherwin MIL #1 will be denied as moot; (3) with respect to the "opinion of counsel" issue, the court accepts and adopts the special master's analysis, as supplemented herein, but not its recommendation, and Sherwin MIL #2 will be denied; and (4) with respect to EPO evidence, Sherwin MIL #3 will be granted in part. The EPO evidence is not admissible in Phase I, but is admissible in Phase II except with respect to the January 10, 2020 EPO decision, which will not be admissible unless Sherwin opens the door. The special master did not resolve Sherwin MIL #4.

Special master R&R # 632 will be adopted in part as the opinion of the court as modified and supplemented herein, and will be remanded in part with respect to copying evidence in phase II that occurred before PPG knew the Asserted Patents existed.

An appropriate order will be entered.

<u>/s/ Joy Flowers Conti</u><br>
Joy Flowers Conti<br>
Senior United States District Judge

Dated: November 19, 2020