**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | ) | CIVIL ACTION NO.  17-1023 |
| | ) | |
| Plaintiff/Counterclaim-defendant, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**OPINION**

I.  Introduction

This hotly contested patent infringement case is on its third round of motions in limine ("MILs").  On December 18, 2020, the special master entered two reports and recommendations ("R&Rs"):  R&R #803 (ECF No. 803) addressed six MILs filed by  PPG Industries, Inc. ("PPG"); and R&R #804 (ECF No. 804) addressed nine MILs filed by The Sherwin-Williams Co. ("Sherwin" or "SW"), a *Daubert* motion, a motion to compel updated damages discovery,[1] and an issue about willfulness that was remanded by the court.  One party or the other objected to virtually every recommendation made by the special master.

The special master's R&Rs were issued after extensive briefing and oral argument by video conference, which the court attended.  (November 11, 2020 Transcript, ECF No. 862). The court also considered the additional briefing relating to the parties' objections and responses to the R&Rs (ECF Nos. 805-825, 830, 831, 837-857).  The objections will be reviewed de novo.

---

[1] SW MIL #12 and PPG's motion to compel supplemental damages discovery were resolved by separate opinion and order.

The parties had ample notice and opportunity to be heard pursuant to Federal Rule of Civil

Procedure 53(f)(1).

II.    <u>Discussion</u>

As a preliminary matter, the court is concerned that in their zeal to gain tactical

advantage, the skillful and competitive legal teams on each side may invite the jury to decide the

case on improper grounds.  The court urges the parties to focus on the specific questions that

must be answered by the jury at each phase of the trial and consider how to tailor their respective

presentations to enable the jury fairly to perform its tasks.  The court will enforce strict

evidentiary boundaries at trial.

The court has a duty as a gatekeeper to ensure that evidence about prior patent

examination proceedings "pass[es] muster, like any other evidence, as relevant and probative of

an issue in the [pending] case."  *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1573 (Fed. Cir.

1993) (discussing Rule 403); *accord Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1324–25

(Fed. Cir. 2014) (district court did not abuse its discretion in finding that "the probative value [of

patent reexamination evidence] was substantially outweighed by the risk of unfair prejudice to

the patentee, confusion with invalidity (on the merits), or misleading the jury, thereby justifying

exclusion under Federal Rule of Evidence 403"); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d

1365, 1380 (Fed. Cir. 2013) (no abuse by district court to exclude evidence of non-final

reexaminations under Rule 403).

The principles involving the court's gatekeeping role apply with full force to evidence

about a patent's prosecution history.  It is well within the court's discretion to preclude evidence

relating to proceedings of the United States Patent and Trademark Office ("PTO") under Rule

403.  *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544, 2019 WL

2

2330855, at *4 (E.D.N.Y. May 31, 2019) (quoting *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009) ("The district court did not abuse its discretion in concluding that the prejudicial nature of evidence concerning the ongoing parallel reexamination proceeding outweighed whatever marginal probative or corrective value it might have had in this case.")).

The Federal Circuit Court of Appeals has explained that where an inequitable conduct defense was resolved at summary judgment, evidence about prosecution irregularities "by the examiner or the applicant are not relevant to patent validity." *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997). The court recognized the "potential for prejudice flowing from unwarranted charges of improper conduct." *Id.*

The focus of the validity trial must be on substance, not procedure. Emphasis on purported prosecution irregularities can be disproportionate and prejudicial. *Id.* at 961. As the court explained:

> The validity of a patent is always subject to plenary challenge on its **merits**. A court may invalidate a patent on any **substantive** ground, whether or not that ground was considered by the patent examiner. Procedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes **irrelevant** after the patent has issued. Indeed, the patent examiner's thought processes are shielded from discovery . . . .

*Id.* at 960 (emphasis added). In *Magnivision*, the jury verdict was vacated and the case remanded for a new trial because the district court abused its discretion by failing to exclude evidence of prosecution irregularities under Federal Rules of Evidence 401-403, which undermined the fundamental fairness of the adjudication. *Id.* at 961. The court explained that "if evidence of marginal probative worth necessitates lengthy rebuttal, it imparts disproportionate weight to the issue." *Id.* On remand, the district court was instructed to exercise its gatekeeping function to exclude evidence about procedural irregularities, which were irrelevant and had an undue tendency to suggest that the jury decide the case on an improper basis. *Id.*

3

The Federal Circuit reiterated that "flawed prosecution arguments do not affect patent validity." *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1329 (Fed. Cir. 2004). The court explained: "After a patent has issued, validity is determined **objectively based on prior art and the other requirements of patentability**." *Id.* (emphasis added). "Introspection and speculation into the examiner's understanding of the prior art or the completeness or correctness of the examination process is not part of the objective review of patentability." *Id.*

The principles set forth in *Magnivision* and *Norian* are persuasive in this case. References to the procedural history of the patent prosecution at the PTO are not particularly probative to Phase I[2] and are highly likely to result in unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. The prosecution history in this case is considerably complicated by, among other things, the existence of parent and child patents, not all of which are at issue; the success by each side at various stages of the reexamination proceedings; Sherwin's covenant not to sue ("CNS"); and the Federal Circuit Court of Appeals' decision in *Valspar Sourcing, Inc. v. PPG Industries, Inc.*, 780 F. App'x 917 (Fed. Cir. 2019) ("*Valspar II*"). In *Valspar II*, the Federal Circuit Court of Appeals stated that the entire inter partes reexamination was vacated "without any collateral effect on other litigation." *Id.* at 919, 922. The court agrees with Sherwin that delving into this procedural morass will open the floodgates and result in the presentation of a great deal of evidence, much of it of little or no probative value.

It is unknown whether the Perez Patent was actually considered by the patent examiner. Both parties invite the jury to speculate. PPG wants to introduce evidence through an expert

---

[2] With respect to Phase II, this court previously ruled that the only evidence relevant to willfulness is the fact that PPG challenged the patents. The <u>result</u> of those challenges will not be admitted as evidence unless Sherwin opens the door by suggesting that PPG's challenges were frivolous (ECF No. 780 at 8-9) (discussing European Patent Office decision).

witness, Stephen Kunin ("Kunin"), to the effect that the Perez Patent was not disclosed as prior

art to the examiner as part of the parent '265 application and was buried in a document dump for

the Asserted Patents.  In sum, PPG invites the jury to speculate that the Perez Patent was not

fully considered by the examiner in order to weaken the presumption of patent validity.

Sherwin, on the other hand, wants the jury to speculate that because Perez was listed as prior art,

the examiner must have considered Perez before awarding the Asserted Patents.  Both parties, in

short, are inviting the jury to speculate and decide the case on an improper basis.  Neither side

will be permitted to do so.

In Phase I, the question for the jury is not what the PTO did, but whether the patent is

invalid.  As explained in *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012),

the presumption of validity under 35 U.S.C. § 282 attaches to all issued patents.

The presumption of validity is implemented through the standard of proof – a party

challenging a patent (here, PPG) must prove invalidity by "clear and convincing evidence."  *Id.*

This standard of proof remains the same regardless whether a prior art reference was considered

by the PTO.  *Id.*  The court explained in *Sciele*:

> [T]here is no heightened burden of proof when a reference was previously
> considered by the PTO, and no lowered burden of proof if a defendant raises a new
> reference or argument during litigation. *Id.* The burden does not suddenly change
> to something higher—"extremely clear and convincing evidence" or "crystal clear
> and convincing evidence"—simply because the prior art references were
> considered by the PTO. In short, there is no heightened or added burden that applies
> to invalidity defenses that are based upon references that were before the Patent
> Office. The burden is always the same, clear and convincing evidence.

*Id.*  In other words, whether or not the PTO actually considered the Perez Patent is not

determinative.  Either way, PPG must demonstrate, by clear and convincing evidence, that the

Perez Patent invalidated the Asserted Patents in this case.  It must do so on the merits (i.e., by

showing anticipation, obviousness, no written description or lack of enablement), not by raising

doubts about the PTO process.  In other words, the parties must convince the jury **why** the prior

art does (or does not) anticipate or render obvious the Asserted Patents.

The court in *Sciele* went on to note that whether a reference was not previously before the PTO goes to the weight the court or jury might assign to the proffered evidence. *Id. Sciele*, however, does not support PPG's argument that excluding evidence from the prosecution history necessarily constitutes reversible error (ECF No. 837). That decision involved a preliminary injunction decision by the court (not a jury trial) and did not address exclusion of evidence under Rule 403. *Sciele*, 684 F.3d at 1253.

PPG's reliance on *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371 (Fed. Cir. 2005), is similarly unavailing. In discussing obviousness, the Federal Circuit Court of Appeals stated: "the district court failed to appreciate that the prosecution history of the relevant patents, while not establishing inequitable conduct, casts some doubt on the final examiner's conclusion." *Id.* at 1379. Among the specific errors identified by the Federal Circuit Court of Appeals, however, were that the district court: (1) improperly concluded that because the prior art had been before the examiner during prosecution, the burden to challenge the claims was particularly high; and (2) failed to examine the expert testimony on the substantive question whether one of ordinary skill in the art would have deemed the invention obvious. *Id.* at 1378-79. *Syntex* involved a bench trial, did not address Rule 403, and involved unusually clear evidence of contrary findings by different PTO examiners. *Id.* at 1382-83. Even under those circumstances, the concurring judge in *Syntex* cautioned that an investigation into the prosecution history was problematic and irrelevant. *Id.* at 1385-86. In sum, the *Syntex* decision does not require that the extensive and murky circumstances of the prosecution history in this case be presented to the jury.

To be clear, evidence that was previously presented to the PTO is not per se inadmissible. As PPG correctly points out, the obviousness inquiry involves underlying facts about the scope and content of the prior art and the differences between the claimed invention and prior art (ECF

No. 810 at 2-3).  To the extent that PPG and Sherwin presented evidence to the PTO about the merits of the invalidity inquiries, they are free to present that evidence to the jury.  The focus, however, must remain on the substantive merits – not the process of the PTO proceedings.

With that explanatory background, the court turns to the specific recommendations and objections now pending.  In light of the sheer number of objections, the court's discussion of each will be limited to the extent needed to explain the basis for its determination.

A.  PPG MIL #3 (references to the stipulation of infringement)

In this litigation, PPG stipulated that its product Innovel infringes the Asserted Patents, while preserving its invalidity defense (ECF No. 341).  The special master recommended that the stipulation not be introduced during Phase I, but that the exact language of the stipulation (ECF No. 686) be admissible in Phase II.  Both parties objected.

The court agrees with the special master that the stipulation itself is irrelevant and unfairly prejudicial in Phase I.  Nothing in the stipulation helps resolve the merits of the anticipation, obviousness, etc., questions that must be decided by the jury.  A jury of laypersons may fail to appreciate the distinction between "infringement" and "invalidity."

The same reasoning applies to Phase II.  If the jury reaches Phase II, the prerequisites to willfulness will necessarily have been established.  Nothing in the stipulation helps the jury resolve the merits of the willfulness or damages issues.  Instead, the jury may be invited to speculate that because PPG stipulated to infringement, it must have willfully acted.  *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, No. CIV.A.05-CV-1887, 2009 WL 3754170, at *14 (D.N.J. Nov. 5, 2009) (probative value of stipulation of infringement was substantially outweighed by the prejudicial effect that it would have on the jury) .

The special master's recommendation is adopted with respect to Phase I, but not with respect to Phase II.  PPG MIL #3 (ECF No. 688) will be GRANTED.  The stipulation is not admissible in either phase of trial, but if PPG opens the door by raising issues inconsistent with the stipulation, the court will revisit this issue.

### B.  PPG MIL #4 (willfulness – no opinion of counsel)

The special master recommended that Sherwin be precluded from citing PPG's lack of an opinion of counsel to prove willfulness in Phase II because that argument would violate 35 U.S.C. § 298.  Sherwin represents that it will not assert that kind of argument, but seeks to preserve its ability to offer rebuttal testimony if PPG suggests that it did rely on advice of counsel by, for example, introducing attorney-drafted documents in evidence.

As the special master correctly noted, the court already resolved this argument.  It held that PPG could submit its public filings challenging the Asserted Patents to rebut willfulness, provided PPG did so through a non-attorney witness (ECF No. 780 at 7).  The admission of those attorney-drafted documents does not open the door for Sherwin.  If PPG engages in other conduct at trial that implies it relied on advice of counsel, Sherwin will have the right to object and, if warranted, offer appropriate rebuttal.  It is premature for the court to rule on what may happen at trial.

The court adopts the special master's recommendation that PPG MIL #4 (ECF No. 689) be GRANTED.

### C.  PPG MIL #5 (secondary considerations not disclosed in discovery)

The special master recommended that Sherwin be permitted to present evidence in Phase I about the secondary considerations of commercial success, industry skepticism, alleged

copying, failure of others, industry praise, unexpected results and long-felt, but unsatisfied, need for the invention.  The special master concluded that these factors were sufficiently identified by Sherwin during discovery and that the relevant evidence overlapped several secondary considerations.

While PPG objected generally that Sherwin did not establish a nexus for all its evidence, it did not identify any specific objections.  As the court previously decided, Sherwin will have an opportunity to prove nonobviousness through its copying evidence.  The record is not sufficiently developed for the court to exclude any evidence on the basis of a lack of nexus.

The court adopts the special master's recommendation, as supplemented above.  PPG MIL #5 (ECF No. 690) will be DENIED.

### D.  PPG MIL #6 (*eBAY* injunction factors)

The special master recommended that Sherwin be permitted to rely on the expert opinions of Dr. James Kearl ("Kearl") (to the extent they were not excluded by other orders) to argue for lost profits and reasonable royalties.  PPG represents that it does not seek to preclude Kearl's damages testimony, but only opinions relating to injunction factors.  Sherwin represents that it has no intent to offer any testimony to the jury about the injunction factors.

There is no real issue here.  The court adopts the special master's recommendation. PPG MIL #6 (ECF No. 692) will be DENIED as moot.  Issues related to injunctive relief will be decided, if necessary, by the court not the jury.

### E.  PPG MIL #7 (number of claims for trial)

PPG asks the court to order Sherwin to select 2 representative claims for trial.  Sherwin notes that the court reduced the scope to 12 claims over 5 patents for summary judgment

purposes (ECF No. 323), and contends that further reduction would deprive it of due process. PPG reasons that the claims and issues are duplicative and it would be difficult to try 12 claims (actually 24, counting dependent claims) in a 4-day trial.

The special master recommended a compromise; i.e., that Sherwin select 1 claim per Asserted Patent, for a total of no more than 5 claims to proceed to trial.  The special master clarified that Sherwin could choose a dependent claim for each patent, which would implicate at least one independent claim (for a total of 10 claims).  Sherwin argues that if only 5 claims will be tried, Sherwin should be permitted to choose any 5 claims, rather than 1 per patent.

To make out a due process violation, Sherwin must demonstrate that the claim selection procedure "risked erroneously depriving it of its rights and that the risk outweighed the added costs associated with a substitute procedure." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011).  In *Katz*, the Federal Circuit Court of Appeals rejected a similar due process argument where the patentee failed to make a showing that any of the unselected claims raised issues of infringement or invalidity that were not duplicative of the issues raised by the selected claims.  *Id.*  The court noted the common genealogy and terminal disclaimers in the asserted patents and rejected the generalized argument that too few claims were permitted.  *Id.* at 1312.  The burden is on the patentee (i.e., Sherwin) "to demonstrate that some of its unselected claims presented unique issues as to liability or damages."  *Id.*  The Federal Circuit Court of Appeals affirmed that district courts must have broad discretion to limit claims as part of their case management duties.  *Id.* at 1313.

Sherwin notes that PPG stipulated to infringement of all 12 remaining claims and argues that they are not duplicative.  In opposing PPG's motion that only 2 claims be tried, Sherwin cited 3 examples of claims presenting unique issues: (1) claim 28 of the '663 patent (quaternary salt linkage); (2) claim 26 of the '900 patent (oxirane group, 5-30 wt.-%); and (3) claim 80 of the

'900 patent and claim 31 of the '854 patent (glycidal ester) (ECF No. 748 at 2-4).  In its objections to R&R #803, Sherwin made only generalized arguments and did not show how the special master's proposal of holding trial on 5 claims (10, with dependencies) would prevent Sherwin from raising any unique issues.

PPG points out, correctly, that as in *Katz*, the Asserted Patents in this case have a common genealogy and terminal disclaimers.  PPG asserts that its invalidity arguments apply in substantially the same way to all claims.

The court acknowledges the practical difficulties involved in addressing 12 (or 24, with dependencies) claims within the time allotted for trial.  Sherwin failed to meet its burden to show that the compromise recommended by the special master would deprive it of any due process rights.  In the exercise of its broad discretion to manage the trial, the court adopts the special master's recommendation.

PPG MIL # 7 (ECF No. 695) will be granted in part and denied in part.  On or before March 15, 2021, Sherwin shall file a notice selecting for trial no more than 1 claim per Asserted Patent (which may be dependent or independent), for a total of no more than 5 claims (10, with dependencies) for trial.  The parties (and special master, if necessary) shall meet and confer about the revised verdict slip.

### F.   PPG MIL #8 (Coors prior art formulations)

In PPG MIL #8, PPG requested that Sherwin be precluded from arguing that the Coors coatings narrow the scope of the Perez Patent.  The special master recommended, consistent with his recommendation in R&R #761 (adopted and supplemented by the court, ECF Nos. 858, 859), that Sherwin be precluded from offering evidence inconsistent with its representation to the PTO that the Perez Patent discloses a BPA-free coating (and, in particular, the opinions in Schork

Rebuttal Report ¶¶ 94-117).  The special master further recommended that, subject to this

limitation,  PPG MIL #8 be denied as written, and: (1) if PPG introduces the Coors coatings in

Phase I, Sherwin be permitted to rebut that evidence; and (2) Sherwin may use the Coors

formulations in its cross-examination of PPG's technical expert, Dr. Robson Storey ("Storey").

Sherwin agrees with the recommendation that PPG MIL #8 be denied, but objects to the

recommendation that if PPG opens the door by introducing the Coors coatings, Sherwin may

only rebut that testimony with non-expert testimony (R&R #803 at 18).  Sherwin argues that

PPG MIL #8 is overbroad by seeking to preclude reference to the Coors coatings for any

purpose.

This issue is largely resolved.  The court recognizes that its opinion and order adopting

R&R #761 were issued after the parties filed their pending objections (ECF Nos. 858, 859).  As

explained therein, the Schork opinions about the Coors coatings containing BPA are not

admissible for the purpose of contradicting Sherwin's representation that Perez discloses a BPA-

free coating.  In particular, Sherwin may not cross-examine Storey about the Coors coatings

containing BPA (ECF No. 830 at 4).

It is premature to decide whether PPG may open the door to the admission of evidence

about the Coors coatings (including Schork expert opinion evidence) for some other purpose,

e.g., to rebut a claim of inherent anticipation (ECF No. 830 at 5 n.2).  It is unclear whether PPG

will introduce the Coors coatings at all, and if so, for what purpose.  PPG is correct that the scope

of a prior art reference is not limited to the preferred embodiment.  *Ultradent Prod., Inc. v. Life-

Like Cosmetics, Inc.*, 127 F.3d 1065, 1068 (Fed. Cir. 1997).  But it is not clear that Sherwin is

attempting to undermine that principle.  PPG intends to introduce the Exemplary Perez Coating

as an embodiment of the Perez Patent.  It is fair game, therefore, for Sherwin to cross-examine

Storey about the differences between that coating and the Coors Coatings, which are also

12

embodiments of the Perez Patent (subject to the prohibition on questions about BPA).

The court adopts the special master's recommendation that PPG MIL #8 (ECF No. 698) be DENIED as written, as supplemented above.


### G.  SW MIL #5 and Kunin *Daubert* motion

The special master aptly observed that SW MILs ## 5, 6, 11 and 13 and its *Daubert* motion to exclude PPG's expert Kunin are related, as each addresses the scope of the prosecution history that should be admitted into evidence.  The special master recommended that Kunin be permitted to testify about the file histories of the Asserted Patents, including defects in the process to suggest that deference to the PTO's determination may not be appropriate in this case. The special master, however, recommended that Kunin be precluded from: (1) testifying generally about quotas, time pressures or problems examiners face; (2) speculating what the PTO would have done if specific prior art references had been brought to the examiner's attention; and (3) offering legal opinions about the appropriate level of deference.  The special master recommended that the 2013 Federal Judicial Center video on the overview of the patent process be shown to the jurors and that Kunin be precluded from offering duplicative testimony.  Finally, the special master recommended that Kunin be precluded from offering testimony about the PTO's interim findings of invalidity in the reexaminations of non-asserted patents based on the Perez Patent, as mandated by the Federal Circuit Court of Appeals' decision in *Valspar II*.

PPG asserts that its primary purpose for introducing Kunin's testimony is to rebut the improper inference Sherwin seeks the jury to draw from the disclosure to the PTO of the Perez Patent as prior art (ECF No. 837 at 2).  For the reasons set forth above, Sherwin will not be permitted to invite the jury to speculate that the PTO considered the Perez Patent.  Kunin's testimony to rebut that speculation is therefore unnecessary.  PPG's use of Kunin would invite

the jury to draw the equally improper inference that the PTO did not consider the Perez Patent. Whether or not the PTO considered the Perez Patent is not probative.  Either way, PPG must prove its invalidity arguments, on their merits, by clear and convincing evidence.  *Magnavision*, 115 F.3d at 960-61.  In other words, Kunin's testimony is not relevant and does not "fit" the case that will be presented to the jury.  *See IGT v. All. Gaming Corp*., No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 11450858, at *2 (D. Nev. Oct. 21, 2008) (involving allegation that prior art was buried before PTO) (presentation of proposed expert about PTO constraints "will simply hammer home innuendos of improper conduct on the part of the examiner to the jury, and would be improper and highly prejudicial.").

The special master's recommendation about Kunin's testimony will be adopted in part (to the extent it precluded Kunin from testifying about certain matters), as supplemented in this opinion, and not adopted in all other respects.  Sherwin's *Daubert* motion to exclude Kunin's testimony (ECF No. 355) will be GRANTED in its entirety.  Sherwin MIL #5 (ECF No. 691) will be GRANTED.  The 2013 Federal Judicial Center video about the patent process may be shown to the jurors.

### H.  SW MIL #6 (Reexamination proceedings of non-asserted patents)

The special master recommended that PPG be precluded from presenting evidence about the reexamination proceedings of non-asserted patents, except for carve-outs set forth in earlier rulings about: (1) Sherwin's admission that the Perez Patent disclosed a BPA-free coating (ECF No. 859); and (2) the overall public record of the reexaminations to refute willfulness (ECF No. 780).  The special master cited the Federal Circuit Court of Appeals' decision in *Valspar II*, which stated that the reexamination proceedings were nullified without any collateral effect on

this litigation, and reasoned that the "flood gates" about the intricacies of the reexamination procedures should not be opened at trial.

Both parties objected. Sherwin objected to the carve-outs recommended by the special master, for the same reasons the court rejected in its prior decisions (ECF Nos. 780, 859). See also the discussion above, granting PPG MIL #4. PPG objected that the special master's recommendation is too broad, and in particular, that the reexamination record contains information relevant to obviousness, such as Sherwin's admissions about the scope and content of the Perez Patent as prior art.

As the court explained above, the parties may present evidence relevant to the substantive merits of the questions to be resolved by the jury, even if that evidence was previously submitted to the PTO. To be clear, a reference to Sherwin's statement being made in the PTO proceeding that the Perez Patent disclosed a BPA-free coating should <u>not</u> come into evidence. The court ruled that Sherwin may not offer evidence or argument contrary to its admission. An appropriate stipulation about the Perez Patent disclosing a BPA-free coating, however, should be presented to the jury. The court does not have sufficient context to decide whether other statements about the scope and content of the prior art may be admissible.

The court adopts the special master's recommendation as supplemented in this opinion. Sherwin MIL #6 (ECF No. 696) will be denied in part (with respect to the carve-outs specified in other decisions) and granted in all other respects. The probative value of the reexamination proceedings, as a general matter, is substantially outweighed by the other considerations in Rule 403.

I.   SW MIL #7 (Inventorship)

Sherwin seeks to preclude portions of the depositions of the named inventors about the Asserted Patents.  The special master recommended that the testimony regarding their development of the alleged invention be admitted into evidence.  As the special master recognized, PPG is not asserting an improper inventorship defense, but the testimony could be admissible for other purposes, particularly if the inventors are called as witnesses.  Sherwin argues that R&R #804 does not identify any specific testimony that would be admissible and argues that the evidence should be excluded under Rule 403.  The court agrees that PPG must demonstrate the testimony is relevant to questions before the jury.  It is premature, however, to rule on those arguments without the context of trial.

The court adopts the special master's recommendation and Sherwin MIL #7 (ECF No. 700) will be DENIED without prejudice to its ability to challenge specific evidence at trial.

J.   SW MIL #8 (SW's recreation of competitor products)

Sherwin seeks to preclude PPG from introducing any evidence that Sherwin recreated competitors' products, at either phase of trial.  In Phase I, Sherwin reasons that whether Sherwin copied some other product is irrelevant to whether PPG copied the technology at issue in this case.   In Phase II, Sherwin argues that the focus should be on PPG's conduct, not Sherwin's conduct.  PPG responds that because Sherwin seeks to introduce copying evidence in each phase, PPG should be able to put that evidence in context by explaining that copying competitors' products is common in the industry.

The special master recommended that Sherwin's MIL #8 be denied, as too broadly drafted, without prejudice to Sherwin's ability to make targeted objections to individual pieces of evidence or to refile a motion with "a far more focused and narrowed list of delineated testimony

and exhibits." (ECF No. 804 at 17). For example, some of the evidence Sherwin seeks to preclude may be relevant to refute Sherwin's evidence about the secondary considerations of industry skepticism and copying.

The court agrees with the special master that Sherwin's MIL#8 is very broadly drafted. For the guidance of the parties and to minimize the number of objections at trial, the court agrees that Sherwin's copying of competitors' products unrelated to the Asserted Patents is not relevant to Phase I. Evidence of Sherwin's copying of competitors' products unrelated to the Asserted Patents is also irrelevant and confuses the issues in Phase II. The focus must remain on PPG's conduct.

The court agrees with the special master's reasoning, but not the recommendation. Sherwin MIL #8 (ECF No. 703) will be granted in part, in that evidence of Sherwin's copying of competitor products unrelated to the Asserted Patents will not be admissible in Phase I or Phase II. The court reserves ruling on whether the evidence identified in Sherwin MIL #8 may be admissible for a different purpose.


### K. SW MIL #9 (written description arguments)

The special master recommended that PPG be permitted to assert its invalidity defense that certain claims lacked a written description for a composition having a phenoplast crosslinker. The special master concluded that this defense was adequately identified in PPG's invalidity contentions, experts Storey and Iezzi offered competing opinions, and Sherwin deposed Storey about the defense.

The court adopts the special master's recommendation that Sherwin MIL #9 (ECF No. 706) be DENIED.

L.  SW MIL #10 (attorney-created technology tutorial)

Sherwin asked the court to rule, in advance, that PPG not be permitted to offer evidence or argument about Sherwin's technology tutorial and related deposition testimony of Robert O'Brien ("O'Brien"), the first named inventor on each of the Asserted Patents.  The special master recommended that the technology tutorial itself not be admitted into evidence, but that PPG be permitted to use this evidence for the limited purpose of impeachment.  The special master also noted that Sherwin's motion involved portions of O'Brien's deposition that did not relate to the technology tutorial.

The court adopts the special master's recommendation.  Sherwin MIL #10 (ECF No. 708) will be DENIED.  The decision to admit any impeachment evidence must await the specific context of trial.

M.  SW MIL #11 (covenant not to sue)

The special master recommended, consistent with prior rulings in this case, that PPG and its damages expert Milani be precluded from introducing evidence about the CNS in either Phase I or II, or as part of its reasonable royalty analysis.

Sherwin's CNS (like PPG's stipulation of infringement) is a legal document created by lawyers in the context of litigation, which has little or no probative value to the underlying substantive disputes in this case.  The court rejects PPG's argument that it is a comparable license which would be relevant to damages.  The probative value of the CNS is substantially outweighed by the other Rule 403 considerations.  Just as Sherwin will not be permitted to make improper use of the stipulation of infringement, so PPG will not be permitted to make improper use of the CNS.

18

The court adopts the special master's recommendation.  Sherwin MIL #11 (ECF No. 711) will be GRANTED.

### N.  SW MIL #13 (DeMaster deposition)

The special master recommended that PPG be permitted to present the testimony of DeMaster, a Sherwin in-house attorney, at trial because his testimony is relevant to the issue of how the Perez Patent was presented to the PTO in the Asserted Patents' claim histories.

This recommendation of the special master is not adopted.  The fact that the court permitted a discovery deposition of DeMaster does not resolve the much different question of admissibility at trial.  For the reasons set forth above, the process by which the Perez Patent was disclosed to the PTO has little probative value and whatever probative value exists is substantially outweighed by the other Rule 403 factors due to opening the Pandora's Box of the PTO proceedings in this case.  Sherwin MIL #13 (ECF No. 716) will be GRANTED.

### O.  Copying evidence prior to the Asserted Patents

The court remanded an issue raised in PPG MIL #1 (ECF No. 575), for the special master to consider whether Sherwin may present evidence in Phase II about PPG copying example 7 of the non-asserted '047 parent patent in 2009, before PPG knew the Asserted Patents existed.[3]  The special master stated:  "The law is clear that willfulness requires that a patent exist and that an accused infringer have knowledge of it."  (ECF No. 804 at 28).  The special master recommended, nevertheless, that the copying evidence be admitted in Phase II as part of the totality of the circumstances from which the jury may determine whether PPG's intent was

---

[3] But for the CNS, Sherwin may have been able to assert willful infringement of the '047 patent.

willful.  The special master noted, but did not directly resolve, PPG's argument for exclusion under Rule 403.

The court previously denied PPG MIL #1 in part and ruled that evidence of PPG's copying of example 7 of the parent patent will be admissible in Phase I as relevant to the secondary considerations of nonobviousness (ECF Nos. 779, 780).  If the trial reaches Phase II, the jury will necessarily have found infringement and the jury questions in Phase II will involve willfulness and damages.

The jury will have heard the evidence about PPG copying example 7 of the parent patent in Phase I.  The parties may refer to that evidence to provide context for PPG's knowledge about the Asserted Patents when they were issued.  The probative value of allowing Sherwin to re-introduce the 2009 copying evidence again in Phase II, however, would be substantially outweighed by the needless presentation of cumulative evidence.  *Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. d/b/a Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, No. 08CV1307, 2012 WL 12894826, at *1 (W.D. Pa. Mar. 21, 2012) (excluding evidence as cumulative under Rule 403 where jury already heard a great deal of evidence on that topic in prior phase of patent trial).[4]

In *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985), the Federal Circuit Court of Appeals held that: "To willfully infringe a patent, the patent must exist and one must have knowledge of it."; *see SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 1108 (2020) (vacating jury's verdict of willful infringement before infringer knew about the patent).  The jury will be instructed that as a matter of law, PPG's copying of example 7 in 2009 could not constitute willful violation of the Asserted

---

[4] In *Univ. of Pittsburgh*, the willfulness phase of trial was held first, and the court ruled that the parties could not reintroduce that evidence in the subsequent validity phase.

Patents, which were not issued until December 31, 2013, or later.  What is relevant to willfulness is PPG's decision to continue marketing Innovel in 2014 and subsequent years despite its awareness of the Asserted Patents.  In other words, the focus should not be on the original copying, but on PPG's decision to continue marketing Innovel.

The court agrees with the special master that PPG's copying of example 7 of the parent patent is part of the totality of the circumstances.  That evidence, however, will have been presented to the jury in Phase I and may be referenced by the parties in their arguments in Phase II as background context.  In Phase II, Sherwin will not be permitted to re-introduce evidence of PPG's copying in 2009 and will not be able to argue  that the 2009 copying proves willful infringement of patents which did not exist until 2013 or later.  This aspect of PPG MIL # 1 (ECF No. 575) will be GRANTED.

III. <u>Conclusion</u>

In summary, the court urges the parties to concentrate on the substantive merits of the disputes that will be resolved by the jury.  In Phase I, the jury will decide invalidity (i.e., anticipation, obviousness, written description, enablement).  In Phase II, if necessary, the jury will decide willfulness and damages.  In this technically complex case, it will be essential to avoid distractions.

These rulings are intended to provide guidance to streamline the presentations to the jury and avoid a multitude of distracting objections at trial.  The court's decisions are, however, without prejudice to the parties' opportunity to seek curative instructions or present appropriate rebuttal evidence if the other side "opens the door" at trial.  It is simply premature to rule on all evidentiary issues in advance.

An appropriate order will be entered.

<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
Senior United States District Judge

Dated:  March 11, 2021