# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | CIVIL ACTION NO. 17-1023 |
| Plaintiff/Counterclaim-defendant, | JUDGE JOY FLOWERS CONTI |
| v. | |
| PPG INDUSTRIES, INC., | |
| Defendant/Counterclaimant. | |

## OPINION

I. Introduction

Pending before the court are objections to the special master's report and recommendation ("R&R") about supplemental damages discovery (ECF No. 965). Specifically, the special master recommended that: (1) motion in limine ("MIL") #14 filed by The Sherwin-Williams Co. ("Sherwin" or "SW") (ECF No. 893) be granted; (2) SW MIL #15 (ECF No. 896) be denied; (3) SW's *Daubert* motion (ECF No. 899) to exclude certain testimony from PPG's damages expert, Michael Milani ("Milani"), be granted in part and denied in part; and (4) the *Daubert* motion filed by PPG Industries, Inc. ("PPG") (ECF No. 907) to exclude certain testimony from Sherwin's damages expert, Dr. James Kearl ("Kearl"), be granted in part and denied in part.

The special master heard oral argument, which the court attended. The parties had ample notice and opportunity to be heard and confirmed in a telephone conference on September 30, 2021, that additional oral argument is not necessary. The motions and the parties' objections to

R&R #965 (ECF Nos. 966, 968) are fully briefed and ripe for disposition. The objections will be reviewed de novo. Fed. R. Civ. P. 53(f)(1).

II. Procedural History

As relevant to the pending disputes, fact discovery (i.e., the "original fact discovery period") closed prior to the second quarter of 2018 (the "Q2 2018"). Trial has been significantly delayed by the COVID-19 pandemic and is now scheduled to commence in January 2022. On February 18, 2021, the court permitted the parties to take additional discovery and submit updated damages expert reports with respect to the period after Q2 2018 (the "supplemental damages period"). The parties raised numerous disputes, which were addressed by the special master in R&R #965.

PPG's and Sherwin's original damages expert reports were necessarily based on the factual record that had been developed during the original fact discovery period and were limited to the period prior to Q2 2018 (the "original damages period"). On March 18, 2020, the court granted Sherwin's motion for partial summary judgment, which prevented Milani from using an Akzo product as a basis for his lost profits or reasonable royalty analysis (ECF No. 530). The court held that to constitute an alternative product, it must be acceptable to customers; and recognized that "[b]ecause the coatings at issue are used in beverage cans, they must undergo a complicated and time-consuming qualification process." (ECF 530 at 16). The court stated: "Although the parties vigorously dispute their respective burdens to develop evidence regarding alternative products, the simple fact is that neither party did so and discovery is now closed." (ECF No. 530 at 17). The court also observed that no practical dispute existed because Milani did not quantify an alternative "lost profits" or "reasonable royalty" analysis based on the Akzo

2

product, and therefore, asking a jury to adjust a damages award based that product would be an exercise in pure speculation. (ECF No. 530 at 17). The court concluded: "Because there is insufficient evidence for a reasonable jury to find that the Akzo product or Exemplary Perez Coating were in the market during the [initial] damages period, it would be improper to refer to either product as a basis to calculate lost profits or a reasonable royalty." (ECF No. 530 at 17).

In October 2020, PPG filed a motion to compel updated damages discovery (ECF No. 740, under seal). PPG did not seek to reopen the original damages period. On February 18, 2021, the court issued an opinion and order denying in part Sherwin MIL #12 (as to the Akzo product after Q2 2018); and granting PPG's motion to compel supplemental damages discovery, limited to the period post-Q2 2018 (ECF No. 864). As relevant to the pending disputes, the court observed in the February 18, 2021 opinion:

> PPG is not seeking (and will not be permitted) to undo the court's decision that the Akzo product did not exist in the market prior to Q2 2018; instead, PPG asks that the supplemental discovery reflect the actual market realities post-Q2 2018. PPG cannot be faulted for failing to produce this evidence earlier; the market data post-Q2 2018 did not exist.
>
> . . .
>
> Neither party's expert may refer to the Akzo product as a non-infringing alternative prior to Q2 2018. For that period of time, as this court previously determined, Sherwin met its burden to demonstrate a two-product market, which justifies the recovery of lost profits damages (ECF No. 530).
>
> . . .
>
> Damages should be based on economic reality; not a market arbitrarily frozen in time by the original close of fact discovery in this litigation.

(ECF No. 864 at 4, 5). The parties were permitted to "engage in supplemental damages discovery, to reflect changes in the market after the second quarter of 2018 ("Q2 2018"),

including an Akzo BPA-NI product." (ECF No. 864 at 3). On August 20, 2021, the court denied PPG's motion to reconsider the scope of supplemental discovery (ECF No. 945).

III. Discussion

There are two principles that govern the scope of supplemental damages in this case, which the court articulated in its previous decisions. First, the scope of the original damages period is fixed – it is based on the evidentiary record developed by the parties in the original fact and expert discovery period. The original MILs and *Daubert* motions were fully litigated. But for the delays attributable to the COVID-19 pandemic, the asserted damages for that period would have been the case presented to the jury. Neither side will be permitted a second bite at the apple with respect to the original damages period. Second, supplemental damages should be based on economic reality; not a market arbitrarily frozen in time by the original close of fact discovery. Thus, the evidence and expert opinions with respect to damages for the period post-Q2 2018 should reflect any changes to the relevant market, including but not limited to the Akzo product. With that preface, the court turns to the pending disputes.

A. SW MIL #14

SW MIL #14 seeks to preclude PPG's cross-examination of its witnesses about pre-Q2 2018 trialing of the Akzo product. PPG represents that Milani will not opine that the Akzo product was a non-infringing alternative product prior to Q2-2018. PPG, however, contends that the disputed evidence is relevant to Sherwin's claim for price erosion damages and points to its cross-examination of Sherwin's witnesses about Akzo trialing during the initial damages period.

The special master recommended that SW MIL #14 be granted.  The court agrees.  With respect to the original damages period, Milani did not quantify an alternative lost profits or reasonable royalty based on the Akzo product at all (let alone quantify the impact of Akzo's trialing). Questions about Akzo trialing the original damages period, therefore, would invite the jury to engage in unwarranted speculation about the original damages period.[1]  SW MIL #14 will be granted.

B.  SW MIL #15

SW #15 largely boils down to a semantic dispute.  Sherwin seeks to preclude Milani from referencing the "Exemplary Perez Coating" in his damages opinions.  PPG responds that it will not reference the "Exemplary Perez Coating," but Milani will opine about the existence of the Perez Patent and Prop 65 as factors in the hypothetical negotiation of a reasonable royalty.  Both parties cite to the court's prior rulings.  (*Compare* ECF No. 530 at 17 *with* ECF No. 636 at 11-12).

As the special master correctly explained, the court has made a distinction between the "Exemplary Perez Coating" and the teachings of the Perez Patent.  The "Exemplary Perez Coating" was a specific coating created by PPG's technical expert, Dr. Robson Storey, "for the specific purpose of demonstrating his opinion that a coating based on the Perez patent would inherently meet the testing limitations."  (ECF No. 530 at 11).  The parties agreed that the Exemplary Perez Coating did not exist in the market during the original damages period and the court in granting Sherwin's summary judgment motion held that the Exemplary Perez Coating was not a non-infringing alternative product (ECF Nos. 530, 864).

---

[1] The court will address below a related dispute – whether PPG may introduce evidence about Akzo trialing pre-Q2 2018 to rebut Kearl's "sticky prices" opinion about the <u>supplemental</u> damages period.

5

The court's ruling about that specific product – which was created during the litigation for technical purposes -- does not preclude PPG from relying on the existence of the underlying Perez Patent itself in its damages analysis. To the contrary, the court specifically explained that Milani's reasonable royalty opinions "that Sherwin's patent did not provide any economic benefit over the disclosures of the Perez Patent, and that the value of both PPG's and Sherwin's products was driven by the Prop 65 regulation" had not been challenged by Sherwin, were supported by the record, and would be admissible. (ECF No. 636 at 11-12). Sherwin did not provide a persuasive reason for the court to reconsider that decision.

Milani will be permitted to opine, in essence, that rather than paying Sherwin a royalty, PPG could have chosen to develop a non-infringing product based on the Perez Patent. Sherwin will have an opportunity to subject that opinion to vigorous cross-examination. In sum, SW MIL #15 will be denied.

C. SW's *Daubert* challenges to Milani

1. References to Akzo trials during the original damages period

Sherwin challenges the references in Milani's supplemental report to trials of the Akzo product during the original damages period. This issue was already addressed in SW MIL #14. To repeat, the parties will not be permitted a second bite at the apple with respect to the original damages period. For the reasons set forth above, this portion of the *Daubert* motion will be granted.

2. The "Exemplary Perez Coating"

Sherwin challenges the references in Milani's supplemental report to the Perez Patent as a basis for his reasonable royalty opinions. This issue was already addressed in SW MIL #15. For the reasons set forth above, this portion of the *Daubert* motion will be denied.

3. Proposed royalty range

Sherwin contends that Milani, again, failed to perform an economic analysis to support his apportionment opinion. Sherwin argues that Milani's opinion that the apportionment range is 0.8% to 99.2% is unhelpful to the jury. PPG represented in its briefs and at oral argument that it is willing to offer only the low end of the range, i.e., Milani's opinion that the patent provides only a de minimis benefit. Sherwin refused that offer.

The court agreed with Sherwin's challenge to the apportionment opinion in Milani's initial expert report, as set forth in its opinion dated August 27, 2020:

> Sherwin is correct that a damages expert must provide a specific economic analysis to support an opinion that reasonable royalties should be apportioned to reflect nonpatented characteristics of a multi-factor product. PPG seeks to offer opinion testimony by Milani on *Georgia Pacific* factor 13 that the profits attributable to the Asserted Patents would be conservatively 50% based on the value of non-patented features of Innovel, such as a high glass transition temperature and performance characteristics such as scalping, flavor, resistance and application. Milani Report at 79-80. Milani did not perform a quantitative analysis to determine that the high glass temperature or other factors constituted 50% of the market value of the product. *See* Milani Deposition at 219-21. Based on the record, it appears to be an arbitrary figure. In *Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp.*, No. CV 12-1369, 2017 WL 3140798, at *4 (W.D. Pa. July 25, 2017), the court excluded a similar "apportionment of benefits" opinion, where the damages expert was unable to articulate any precise basis for the 50% reduction during his deposition and it appeared to be entirely subjective. In *Koninklijke,* the court rejected the damages expert's attempt to rely on an undocumented conversation with a technical expert. *Id*. at *4 n.5. *See LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 69 (Fed. Cir. 2012) (excluding apportionment of benefits opinion where expert's apportionment was not based on a credible economic analysis). The same analysis applies here. Milani's opinion about the allocation of benefits is supported only by

7

> an undocumented conversation with Storey and Milani did not conduct a sufficient economic analysis about the benefits of the various features of Innovel to support a 50% allocation. PPG would be inviting the jury to speculate about the value of the nonpatented features. *See Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 2461551, at *19 (D. Del. May 7, 2020) (because damages expert provided no concrete tie to the specific 50% allocation value, the opinions lacked a sufficiently reliable methodology). The error cannot be remedied by opining that the allocation is conservative. *Id*. at *18 ("merely labelling a value 'conservative' is no substitute for a showing that there is an evidentiary foundation for the particular percentage selected"). Milani will not be permitted to testify that profits should be apportioned to reflect the value of nonpatented features of Innovel, such as a high glass transition temperature.

ECF No. 636 at 10-11. In short, Milani provided no rationale for his 50% apportionment.

The apportionment opinion in Milani's supplemental report does not suffer from the same flaw. As the special master explained, Milani quantifies the low end of his proposed apportionment range based on his opinion that the patents provide a de minimis contribution to the profits generated by Innovel. Sherwin may disagree with the substance of Milani's opinion, but it is essentially parallel to Kearl's apportionment opinion that the patents (i.e., the BPA-NI feature) generate 100% of the profits. The high end of Milani's apportionment range is quantified by accepting (for argument's sake) Kearl's 100% apportionment opinion and challenging some of Kearl's other assumptions (ECF No. 880, Ex. B).

Sherwin argues that Milani's opinion should be precluded because he is not offering his own opinion that the patents provide a de minimis contribution, but is relying on an undocumented discussion with Dr. Storey. This argument implicates SW MIL #15 and the court's previous ruling that Milani may testify that Sherwin's patents did not provide any economic benefit to the Perez Patent and that the value of the products was driven by Prop 65 (ECF No. 636 at 11-12). To be sure, Milani is not qualified as a technical expert and it will be incumbent upon PPG to introduce sufficient evidence to support Milani's apportionment opinion that the patents provide a de minimis contribution (through Dr. Storey or otherwise). Milani's

8

apportionment opinion will not be precluded; instead, Sherwin will have the opportunity to cross-examine him (and Dr. Storey) at trial. This portion of Sherwin's *Daubert* motion will be denied without prejudice – if a proper foundation for Milani's opinion is not laid, Sherwin may renew its motion prior to Milani's testimony.

In sum, the court adopts the special master's R&R #965, as supplemented herein, with respect to SW MIL #14, SW MIL #15 and Sherwin's renewed *Daubert* challenges to Milani.

D. PPG's *Daubert* challenges to Kearl

1. Price erosion/"sticky price"

Kearl's price erosion and "sticky price" opinions are related and will be combined for analysis. In his original damages report, Kearl opined that Sherwin experienced price erosion due to PPG's trialing and sales of the infringing Innovel product, i.e., PPG provided potential competition which reduced the price at which Sherwin could sell its infringed product.

The court denied PPG's *Daubert* challenge to this opinion, (ECF No. 636 at 13), and that decision is law of the case. PPG points out that during the initial fact discovery period it cross-examined Sherwin witnesses about Akzo's trialing activities. (ECF No. 975 at 2-3). Milani's original damages report, however, did not address Akzo's activities in the context of a lost profits or a reasonable royalty analysis. Introducing the fact testimony, without an expert quantification opinion, would invite the jury to speculate about how that testimony impacts damages pre-Q2 2018. (ECF No. 965 at 6-7; ECF No. 530 at 17). PPG will not be permitted to introduce evidence about Akzo trialing to rebut Kearl's price erosion opinion with respect to the original damages period.

9

In his supplemental damages report (ECF No. 908-1), Kearl opined that Akzo's entry into the market would eventually have lowered the price of the Sherwin product, regardless of the PPG product. Kearl, therefore, did not claim price erosion losses after 2018. Kearl opined, however, that the Akzo product would not immediately affect the pricing of Sherwin's product because: (1) it would take time for Akzo to become qualified at different customers; and (2) Sherwin negotiated long-term contracts with many of its customers. In other words, Kearl opined that Sherwin's prices were "sticky" and that price erosion due to PPG's sales would continue to be a component of its damages for the second half of 2018 (i.e., the first six months of the supplemental damages period). (ECF No. 908-1 at 8-9).

PPG contends that because Kearl based his price erosion opinion on PPG's trialing during the original damages period, while ignoring Akzo's similar trialing activities in his price erosion opinion for the supplemental damages period, his methodology is unreliable. The special master rejected PPG's argument and recommended that this aspect of PPG's *Daubert* challenge be denied. The court agrees with the special master's recommendation. Kearl's methodology is acceptable (even if PPG believes he failed to consider all the relevant evidence) and he will be permitted to testify about the basis for his price erosion/sticky price opinions in the supplemental damages period.

The court does not agree, however, with the entirety of the special master's reasoning. In R&R #965, the special master stated that "if PPG wanted to account for Akzo's pre-market activities in the original damages period, it should have done so in Mr. Milani's Initial Report." (ECF No. 965 at 13). At the time of Milani's initial report, PPG could not have anticipated that there would be a supplemental damages period, much less anticipated the precise supplemental opinions that might be offered by Kearl. PPG's failure to quantify the effects of Akzo's

10

activities during the original damages period does not preclude PPG from responding to the new opinions offered with respect to the supplemental damages period.

The court instructed that the supplemental damages period should reflect market realities, not the arbitrary close of discovery date. If Sherwin introduces Kearl's "sticky price" opinion into evidence, Sherwin will open the door for PPG to rebut that opinion with evidence that Akzo was, in fact, engaged in trials or qualified at various customers prior to the supplemental damages period such that price erosion damages are not recoverable post-Q2 2018. PPG cannot introduce evidence about Akzo trials to invite the jury to speculate about the <u>original</u> damages period, but PPG can introduce relevant evidence about market realities to rebut Kearl's <u>supplemental</u> damages opinions.

In sum, this aspect of PPG's *Daubert* challenge to Kearl's supplemental opinion will be denied. Kearl will be permitted to testify about his price erosion and sticky prices opinions in the supplemental damages period. If Kearl does so, however, PPG will be permitted to challenge those opinions, including by presenting evidence about Akzo's trialing and qualification activities prior to Q2 2018. To avoid confusion by the jurors if that evidence is adduced at trial, the parties shall meet and confer (with the special master if necessary) and propose an appropriate limiting instruction about how the jury should consider the Akzo trialing evidence only for the post-Q2 2018 period.

2. Long-term Contracts

PPG also contends that Kearl improperly bases his "sticky prices" opinion about long-term contracts on an undocumented discussion with a Sherwin employee. It will be incumbent on Sherwin to introduce evidence to support Kearl's opinion and PPG will have the opportunity

to challenge that evidence at trial. If a proper foundation for Kearl's opinion is not established, PPG may renew its *Daubert* challenge prior to Kearl's testimony. This aspect of PPG's motion will be denied without prejudice.

    3. Reasonable royalty

In his initial opinion, Kearl opined on the royalty rate per gallon that Sherwin and PPG would have reached after a hypothetical negotiation for a license in December 2013. The court rejected PPG's *Daubert* challenge to this opinion and explained that the jury could decide the "battle of the experts" with respect to Kearl's and Milani's respective applications of the *Georgia-Pacific* factors. (ECF No. 636 at 10). In his supplemental damages opinion, Kearl opined that the same royalty rate was still correct and conservative. (ECF No. 908-1 at 9).

PPG argues that Kearl's reasonable royalty opinion should be precluded as unreliable based on his failure to consider newly-produced evidence that Sherwin was aware of Akzo's trialing activities and potential entry into the marketplace prior to December 2013, the date of the hypothetical negotiation (ECF No. 908 at 8).

In contrast to the "sticky price" opinion discussed above, Kearl's reasonable royalty opinion is not new -- it is the same reasonable royalty opinion he expressed in his initial report. The applicable date of the hypothetical negotiation is unchanged. PPG had the opportunity and incentive to quantify Akzo's trialing activities prior to the December 2013 hypothetical negotiation to rebut Kearl's original report, but did not do so. The court determined it would be improper to refer to the Akzo product as a basis to calculate lost profits or a reasonable royalty during the original damages period. (ECF No. 530 at 17). As the court has reiterated, the supplemental damages period does not give the parties a second bite at the apple to introduce

12

evidence or theories that they could have presented the first time. This aspect of PPG's *Daubert* motion will be denied.

   4. Red Bull

Kearl opines that during the supplemental damages period Sherwin is entitled to recover damages for indirect infringement based on PPG's foreign sales of Innovel to Red Bull for cans that are imported into the United States. There are two aspects to PPG's challenge to Kearl's Red Bull opinion: (1) it exceeds the scope of permissible supplemental damages; and (2) the methodology is unreliable. The special master recommended that the Red Bull opinion be excluded. The court disagrees.

The Red Bull opinion is within the scope. As Sherwin points out, the theory of indirect infringement has been in the case. The parties were permitted to "engage in supplemental damages discovery, to reflect changes in the market after the second quarter of 2018 ("Q2 2018"), **including** an Akzo BPA-NI product." ECF No. 864 at 3 (emphasis added). Supplemental damages were not limited to Akzo; the court permitted the parties to address whatever market conditions might have changed.

PPG's methodology challenge is stronger, but still unavailing. Clearly, Sherwin did not obtain the best evidence, i.e., actual sales records from Red Bull or Ball. Instead, Kearl attempted to estimate the indirect infringement by combining PPG's estimates about its sales to two Ball facilities in Europe with publicly available information about the number of Red Bull cans imported into the United States. PPG does an effective job highlighting the weaknesses in the chain of assumptions used by Kearl (ECF No. 985 at 6).

The court concludes, however, that PPG's criticisms go to weight, rather than

admissibility. *Yodlee, Inc. v. Plaid Techs. Inc.*, No. CV 14-1445, 2017 WL 466358, at *1 (D. Del. Jan. 27, 2017) (alleged errors in damages expert's estimate of lost profits "go to weight rather than admissibility"). *See Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, No. 18-CV-00939, 2020 WL 5366319, at *18-20 (N.D. Cal. Sept. 8, 2020) (discussing the permissible spectrum for damages expert methodology). In *Cyntec*, the court permitted a damages expert who used a similar methodology to testify about indirect sales; the expert in *Cyntec* took the defendant's customer base, summarized geographic sales breakdowns, and multiplied revenues outside the United States by importation rates for each customer. *Id*. at *3. The court explained that the expert had cited substantive data to determine the amount of indirect sales, although there were some gaps in his analysis, and the jury could determine whether the assumptions in his calculations were valid. *Id.* at *19-20. The court concludes that Kearl's methodology sets forth a reasonable estimate that may be presented to the jury. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").[2] PPG's remedy is effective cross-examination at trial.

This aspect of PPG's *Daubert* motion will be denied, contrary to the special master's recommendation.

IV. Conclusion

In summary, the special master's R&R #965 will be adopted in part, as supplemented herein, and rejected in part. SW MIL #14 (ECF No. 893) will be granted. SW MIL #15 (ECF

---

[2] The proponent of expert testimony has the burden to establish: (1) what facts or data the expert relied on; and (2) that the basis for the opinion is reasonable, including "facts or data not admitted if of a type reasonably relied upon by experts in the field." 29 Charles Alan Wright & Victor Gold, Federal Practice & Procedure § 6275, at 440 (2d ed. 2016).

14

No. 896) will be denied.  Sherwin's *Daubert* challenge to Milani's supplemental opinion (ECF No. 899) will be: (1) granted with respect to references to the impact of Akzo's trialing during the original damages period;  (2) denied with respect to Milani's references to the Perez Patent as a basis for his reasonable royalty opinions; and (3) denied without prejudice with respect to Milani's proposed apportionment range.  PPG's *Daubert* challenge to Kearl's supplemental opinion (ECF No. 907) will be:  (1) denied with respect to Kearl's price erosion/sticky prices opinions, with the proviso that those opinions would open the door for rebuttal evidence about Akzo's trialing activities (with an appropriate limiting instruction); (2) denied without prejudice with respect to Kearl's opinion about long-term contracts; (3) denied with respect to Kearl's reasonable royalty opinion; and (4) denied with respect to Kearl's Red Bull opinion.

It is not necessary to rule on the portion of PPG's motion seeking to exclude Kearl's convoyed sales and injunctive relief opinion because Sherwin represents that opinion will not be presented to the jury.  To the extent that Kearl's and Milani's opinions rely on undocumented conversations with other persons, it will be incumbent upon the party seeking to offer that opinion to establish a proper foundation.  The opposing party may renew its *Daubert* challenge to those opinions if a proper foundation is not laid.

An appropriate order will be entered.

                /s/ Joy Flowers Conti
                Joy Flowers Conti
                Senior United States District Judge

Dated:  October 27, 2021