**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | ) | CIVIL ACTION NO.  17-1023 |
| | ) | |
| Plaintiff/Counterclaim-defendant, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**OPINION**

I.  <u>Introduction</u>

Pending before the court in this contentious patent infringement case are objections to the special master's report and recommendation ("R&R") about jury instruction and verdict slip disputes (ECF No. 990).  The trial is bifurcated into two phases: (1) invalidity; and (2) if necessary, willfulness and damages.  The court will deliver preliminary instructions for each phase, in addition to final instructions for each phase.  The parties initially articulated a vast number of disputes about the jury instructions and verdict slips at each phase of the trial (ECF Nos. 680-683).

The parties and special master have worked diligently to resolve or narrow those disputes (ECF No. 948-949).  On October 13, 2021, the parties submitted Joint Proposed Amended Jury Instructions (ECF No. 988).  The parties agreed on the verdict slip to be used in Phase I (ECF No. 950).  Disputes remain with respect to the verdict slip for Phase II (ECF No. 951).

The remaining disputes were not presented in the context of the precise language of draft

jury instructions, as in a charge conference.  Instead, the parties identified "buckets" of related disputes that pertain to numerous instructions.  It will be necessary for the parties to incorporate: (1) the rulings in this decision; (2) the recommendations of the special master to which they did not object; and (3) the disputes which the parties resolved, into the final proposed preliminary and final jury instructions and verdict slips that will be delivered to the jury.  The parties shall meet and confer to file those documents on or before December 17, 2021.  Any remaining disputes will be resolved by the court at the final pretrial conference.

II.  Procedural History

The special master heard oral argument on October 11, 2021, which the court attended. The parties had ample notice and opportunity to be heard.  The parties' objections to R&R #990 (ECF Nos. 998, 999) are fully briefed and ripe for disposition.  The objections will be reviewed de novo.   Fed. R. Civ. P. 53(f)(1).

III. Discussion

The parties raised the following objections to R&R #990:

1.  The number of claims for trial;

2.  The Phase I preliminary instruction about Innovel;

3.  The Phase I preliminary instruction about Perez disclosing a BPA-free coating;

4.  The Phase I instruction about prior art/particular embodiments;

5.  The Phase I instruction about secondary considerations evidence;

6.  The Phase II final instruction about Akzo during the initial damages period;

7.  The Phase II final instructions about willfulness; and

8.  The omission of post-verdict royalties in the Phase II verdict slip.

These objections will be resolved seriatim.  No objections were raised with respect to the special master's recommendations about the USPTO process instructions, the anticipation/inherency instruction, or including Sherwin's burden to establish damages in the Phase II preliminary instructions.  Those aspects of R&R #990 will, therefore, be adopted.

    A.  Number of claims for trial

The special master thoroughly reviewed the history of this dispute and recommended that the 5 claims identified by Sherwin on March 25, 2021 (ECF No. 868) can be asserted at trial, even though they implicate 8 other claims, for a total of 13 claims.  The special master commented that Sherwin's identification was in keeping with the special master's intent in his initial R&R about this dispute (ECF No. 803 at 14-16) (proposing a compromise with respect to PPG MIL #7).

PPG focuses on the portion of the court's opinion dated March 11, 2021, which stated: "On or before March 15, 2021, Sherwin shall file a notice selecting for trial no more than 1 claim per Asserted Patent (which may be dependent or independent), for a total of no more than 5 claims (10 with dependencies) for trial."  (ECF No. 867 at 11).  PPG argues that Sherwin must be limited to a total of 10 claims.  PPG first raised this argument on August 30, 2021, in connection with jury instruction disputes.

The court agrees with the special master.  The court made clear in its opinion that it was adopting the special master's recommendation "that Sherwin select 1 claim per Asserted Patent, for a total of no more than 5 claims to proceed to trial."  (ECF No. 867 at 10).  The court noted the special master's clarification that Sherwin could choose a dependent claim for each patent, which would implicate "at least one" independent claim.  *Id.*  PPG did not clearly raise the issue of multiple dependencies – before or in response to the court's opinion.  The primary focus of the

parties, special master and court was on the total number of claims Sherwin could assert; the court assumed that 5 dependent claims would implicate the same number of independent claims.

Sherwin's identification of 5 claims in March 2021 complied with the court's order. The parties have been preparing for trial since March 2021 based on those claims. PPG did not provide a persuasive rationale for the court to restrict Sherwin's claims at this late stage of the case because they implicate 8 rather than 5 other claims. This aspect of R&R #990 will be adopted.

B.  Innovel instruction

Sherwin contends that during the preliminary instructions in Phase I, the jury be instructed that: "*There is no dispute that PPG's Innovel HPS spray coating is covered by the asserted claims in each of Sherwin's asserted patents.*" Sherwin recognizes that infringement is not an issue for trial. Sherwin argues, however, that its requested instruction will eliminate the need for it to introduce (undisputed) evidence that Innovel is covered by the asserted claims. Sherwin contends that its requested instruction is relevant with respect to the secondary consideration of copying.

The special master recommended that this instruction be omitted. The special master concluded that Sherwin's proposal, in the preliminary instructions, was confusing and misleading. The special master noted that the context of Sherwin's proposed language did not relate to the secondary considerations.

The court previously held that informing the jury about PPG's stipulation that Innovel infringed Sherwin's patents was irrelevant and unfairly prejudicial (ECF No. 870 at 7-8) (granting PPG MIL #3). The stipulation will not be read to the jury, although the court will

instruct the jury in Phase II about the infringement.  *Id.* at 7 n.3.  The court expressed its concern that in Phase I, "[a] jury of laypersons may fail to appreciate the distinction between 'infringement' and 'invalidity.'"  *Id.* at 7.

Sherwin's proposed language in the "summary of contentions" in the Phase I preliminary instructions, if adopted, would circumvent the court's decision.  There is no need for Sherwin's proposed language in the preliminary instructions in Phase I.  This aspect of R&R #990 will be adopted.  If PPG opens the door at trial, the court will revisit this issue.

C.  Perez BPA-free instruction

In a written response to a USPTO examiner on August 27, 2012, Sherwin stated: "Because of its use of epoxies, Christenson's coating contains BPA. Perez, on the other hand, is a BPA-free coating (Valspar agrees with the Office's finding in this regard)."  (ECF No. 859 at 2) (quoting ECF No. 350-3 at 21).  After extensive briefing, the court held that "Sherwin is bound by the position it took at the USPTO that Perez discloses a BPA-free coating."  (ECF No. 859 at 5).  The court encouraged the parties to negotiate an appropriate stipulation about this issue, but they were unable to do so.  The parties agree that a preliminary jury instruction is needed.

Sherwin's most recent proposal (made after the oral argument) is:  "*For purposes of this trial, you can assume that U.S. Patent No. 5,714,539 (the 'Perez patent') is BPA-free.*"  PPG's proposal is:  "*Additionally, it has been determined that U.S. Patent No. 5,714,539 (the 'Perez patent') discloses a BPA-free coating.  Thus, in your assessment of the validity of the Asserted Claims, you are to assume that the Perez patent discloses a BPA-free coating.*"  The special master recommended that PPG's proposed language be adopted.

The court will issue a slightly modified instruction:  "**Additionally, U.S. Patent No. 5,714,539 (the 'Perez patent') discloses a BPA-free coating.  Thus, in your assessment of the validity of the Asserted Claims, you can assume that the Perez patent discloses a BPA-free coating.**"

Sherwin clearly told the USPTO that Perez disclosed a BPA-free "coating" and the court held that Sherwin would be bound by that position.  Sherwin's proposed language is not consistent with the court's order, which is law of the case.  To be clear, as the court previously ruled, Sherwin is entitled to argue that the Perez patent does not disclose a complete can coating that invalidates the Asserted Patents (*See* ECF No. 636 at 5) ("PPG will offer expert opinions that the Perez Patent discloses a product suitable for use as a spray-applied interior-can coating.  Sherwin is entitled to rebut that testimony with its own expert opinions.").  For the purposes of this case, the phrase "it has been determined that" is not necessary and may confuse the jury.  This aspect of R&R #990 will be adopted, as modified above.

D.  Scope of prior art instruction

The parties dispute the instructions about how to interpret the teachings of the prior art.  The parties were able to agree on the following:  "**Anticipation must be determined on a claim-by-claim basis.  For each Asserted Claim, PPG must prove by clear and convincing evidence that all of the requirements of that claim are present in a single piece of prior art and that all of the requirements of that claim are arranged as in the claim.**"

PPG suggests the following addition:  "*The teachings of a prior art reference, such as the Perez patent, should not be limited to any one specific embodiment.  It is improper to limit the teachings of a prior art reference by focusing on single embodiments, including 'examples,' or*

6

*on 'preferred' embodiments, or on commercial embodiments.  A prior art reference with a variety of teachings is relevant in its entirety – you need to consider the full extent of its disclosure.  Also, it is not required that each element of the claims under attack be identified in one embodiment in the single prior art reference.  It is necessary only that all elements of the claim be found somewhere within the invalidating reference."*

Sherwin contends that PPG's proposal is contrary to black letter law, largely because it does not incorporate the requirement that all elements be disclosed "arranged as in the claim." (ECF No. 1006 at 6-7).  Sherwin argues that PPG's instruction should not be given.

The special master recommends a compromise instruction that accepts PPG's proposal about preferred embodiments, but strikes the last two sentences about finding elements somewhere within the reference.  The special master's proposed instruction is:  "*The teachings of a prior art reference, such as the Perez patent, should not be limited to any one specific embodiment.  It is improper to limit the teachings of a prior art reference by focusing on single embodiments, including 'examples,' or on 'preferred' embodiments, or on commercial embodiments.  A prior art reference with a variety of teachings is relevant in its entirety – you need to consider the full extent of its disclosure.*"

PPG objects to the compromise instruction.  PPG contends that its proposal is proper and tracks the language in *Beloit Corp. v. U.S. Int'l Trade Comm'n*, 845 F.2d 1033 (Fed. Cir. 1988) (nonprecedential) ("it is not required, as Beloit asserts, that each limitation of the claims under attack be identified in one embodiment in the single reference. It is necessary only that all limitations of the claim be found somewhere within the invalidating reference.").

The special master recommended that this language be stricken and reasoned that where a prior art reference contains disparate elements in alternative embodiments that appear

inconsistent with each other, the burden is on the party asserting anticipation to prove that the prior art discloses how all elements could be used together to a POSITA (ECF No. 990 at 11) (citing *Therasense, Inc. v. Becton, Dickinson*, No. C04-02123 MJJ, 2007 WL 2028197, at *6 (N.D. Cal. July 10, 2007)).  As the special master explained, anticipation cannot be proven by cobbling together disparate elements in a prior art reference.  (ECF No. 990 at 11) (citations omitted).

The concept of "arranged as in the claim" is included in the agreed-upon instruction (quoted in **bold** above).  Although Sherwin contends that PPG's proposal is improper for failing to repeat that language, the parties do not contend that further explanation about the arrangement concept is needed.  *See, e.g., Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008) (discussing meaning of the expression "arranged as in the claim").

PPG contends that its proposed instruction complements the "arrangement" instruction by informing the jury that prior art references are not limited to single examples or preferred or commercial embodiments.  The court agrees with PPG and the special master that an explanation about embodiments is appropriate (and Sherwin did not object to the special master's compromise).  PPG did not articulate, however, why the special master's suggested compromise fails to accomplish that task.

The court concludes that the special master's proposal is appropriate.  It addresses PPG's concern about not limiting the prior art to any one embodiment and does not introduce the potential confusion and disputes about the arrangement issue.  This aspect of R&R #990 will be adopted.  If the parties believe that additional explanation about the "arranged as in the claim" concept should be given to the jury, they shall promptly meet and confer (with the special master if necessary) about suggested language.

E.   Secondary considerations instruction

At the end of the instructions on secondary considerations, PPG proposes the following sentence: "*Additionally, objective evidence does not overcome clear cases of obviousness.*" Sherwin opposes this instruction.  The special master recommended that it be omitted.

PPG argues, in essence, that because secondary considerations will be a major focus of Sherwin's presentation to the jury, the instructions on that issue should be embellished.  PPG contends that secondary considerations are only one of four parts of the obviousness inquiry, and the jury should be informed how to consider each factor.  Sherwin argues that this proposed instruction improperly suggests to the jury how it should weigh the evidence.

The special master observed that PPG's suggested language is not in the model jury instructions for this court or the Court of Appeals for the Federal Circuit.  The special master noted that secondary considerations must be considered by the jury as part of the obviousness analysis (ECF No. 990 at 15).  The special master distinguished the decisions relied upon by PPG as involving fact-specific decisions by the court about the weakness of the objective evidence in those cases.

The court agrees with the special master that PPG's suggested instruction is not appropriate.  PPG is free to argue to the jury that the objective evidence in this case does not overcome the other evidence of obviousness.  This aspect of R&R #990 will be adopted.

F.   Akzo instruction

The parties agreed on the following instruction in Phase II of the trial to characterize the court's prior rulings about noninfringing alternatives:  "**For purposes of this trial, you are to assume that, during the initial damages period up until June 2018, there were no**

9

**commercially available, acceptable, non-infringing alternatives on the market. [   ]. You may, however, take into account the existence of AkzoNobel's Aqualure BPA-NI product on the market for determining the proper amount of lost profits damages for any period after June 2018.**" (ECF No, 988-2 at 16-17).

Sherwin proposes to insert an additional sentence at the bracket: "*This means you should not take into account AkzoNobel's Aqualure BPA-NI product for purposes of determining a reasonable royalty or for purposes of determining lost profits damages for any period of time up through the end of June 2018.*" PPG contends this sentence is unnecessary and duplicative of the previous sentence.

The special master recommends that Sherwin's language be included and noted that the parties' agreed-upon language for the period after June 2018 does not reference reasonable royalties. (ECF No. 990 at 17-18). The court agrees with the special master. The additional language is consistent with the court's prior rulings and helps clarify that the Akzo product cannot be the basis for lost profits or a reasonable royalty prior to Q2 2018. This language will become even more important if Sherwin opens the door to evidence about Akzo's market activities during the pre-Q2 2018 period by offering Kearl's "sticky price" opinion. (*See* ECF No. 996). This aspect of R&R #990 will be adopted.

G.  Willfulness instructions

The parties dispute several aspects of the proposed willfulness instructions. PPG objects to the omission of an instruction about acting consistent with the standards of the industry. Sherwin objects to the special master's suggested compromise in the introductory paragraph about conduct prior to the existence of the patents; omission of an instruction about intentionally

copying the subject matter (or the product) of the Asserted Patents[1]; and the special master's suggested compromise about references to the copying evidence introduced in Phase I.

1.   Standards in the industry

PPG seeks to track the model instructions to the effect that one factor in determining willfulness is "*whether or not PPG acted consistently with the standards of behavior for its industry." See, e.g.,* WDPA Model Patent Jury Instructions at 24 ("Factors that may be considered as evidence that [alleged infringer] was not willful include: (1) Whether [alleged infringer] acted in a manner consistent with the standards of commerce for its industry.").   The special master recommends that this instruction not be given for several reasons: (1) the court granted SW MIL #8, which precluded evidence of Sherwin's copying of competitor products unrelated to the Asserted Patents; (2) the special master was not aware of any fact evidence PPG intended to proffer about the standards of behavior in the industry; and (3) there is no expert opinion to support this factor.  The court will address these reasons seriatim.

First, the court's ruling on SW #8 is not fully determinative of this dispute.  In its prior decision, the court observed that Sherwin's MIL #8 was very broadly drafted.  (ECF No. 870 at 17). The special master recommended that SW MIL #8 be denied without prejudice to assert targeted objections at trial.  The court agreed with the special master's rationale, but not the recommendation, and granted SW MIL #8 in part.  (ECF No. 870 at 17).   The court's ruling on SW MIL #8 excluded only evidence of Sherwin's copying of products "**unrelated** to the Asserted Patents."  (ECF No. 870 at 17) (emphasis added).  The court reserved ruling on whether the evidence at issue in SW MIL #8 may be admissible for a different purpose.  *Id.*

The court reiterates that Sherwin's copying of other companies' products is irrelevant to

---

[1] The Asserted Patents at issue in this case are the "child" '663, '012, '763, '900 and '854 patents (ECF No. 530).

the invalidity issues in Phase I.  The Phase II willfulness inquiry is broader.  Willfulness

implicates PPG's state of mind and is determined based on the totality of the circumstances.

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed.

Cir. 2004).

Second, apparently there will be relevant fact testimony.  In its objections, PPG

represents that it will introduce fact evidence from PPG and Sherwin witnesses that review of

competitor patents is a routine industry practice.[2]  (ECF No. 999 at 7).  PPG did not identify any

expert opinion.

Third, it is not clear that an expert opinion about practices in the industry is essential.[3]

The special master did not cite any authority in the R&R for the proposition that an expert

opinion is required.  PPG did not respond to the special master's recommendation that an expert

opinion is necessary.  Sherwin did not address whether an expert opinion is necessary in its

response to PPG's objections.  The court did not locate any decisions directly on point in its

independent research.  In *Berckeley Investment Group., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir.

2006) (discussing evidence about scienter in a securities fraud case), the court explained that

expert testimony about industry practice and custom may be admissible, but is not outcome

determinative with respect to the party's state of mind.  *Id.* at 219 (citing *Newton v. Merrill,*

*Lynch, Pierce, Fenner & Smith*, 135 F.3d 266 (3d Cir. 1998) ("*Newton I*").  The court explained

that in *Newton I*, a party was permitted to introduce fact evidence of industry custom and

practice (i.e., affidavits from other investment brokers explaining that they followed the same

---

[2] In another prior decision, the court recognized PPG's argument that its conduct was "synthesizing," rather than "copying," but commented that the characterization of PPG's conduct was an issue of fact for the jury.  (ECF No. 780 at 3).

[3] Whether an expert opinion on industry standards is necessary also implicates pending disputes about exhibits and deposition designations.

allegedly fraudulent investment practices) to demonstrate that it had not acted with the requisite scienter. *Id.*

A jury's determination of willfulness is analogous to the scienter question discussed in *Berckeley* and *Newton I* and is distinguishable from decisions involving breach of the applicable standard of care, on which an expert opinion would be necessary. It appears that some fact evidence about standards in the industry would be admissible.

There remains a dispute about the scope of such evidence. The parties did not seek clarification about the phrase "unrelated to the Asserted Patents" (ECF No. 870 at 17) and how that ruling applies to the "standards in the industry" willfulness factor. Sherwin would limit the relevant market to BPA-NI inside beverage can coatings, while PPG seeks more broadly to introduce evidence about Sherwin's copying of other inside beverage can coatings. The court is aware that the special master addressed the scope of Sherwin copying evidence in the context of disputes about exhibits in R&R #1011, objections to which are not yet fully briefed.

It is possible that PPG will be able to lay a proper foundation that some of the Sherwin and PPG witnesses have sufficient experience about "standards in the industry" to testify about review and monitoring of competitors' patents related to the Asserted Patents. *See* Fed. R. Evid. 701. PPG, however, did not proffer that evidence to the court. Based on the current record, it is unclear whether an instruction about compliance with industry standards is appropriate. This aspect of R&R #990 will be taken under advisement, as supplemented herein. The court will deny PPG's objections without prejudice to reassert at the final charge conference after the relevant evidence has been adduced.

2.   Introductory paragraph

In the introductory paragraph to the willfulness instructions, the special master suggested a compromise to reflect the court's rulings on motions in limine about pre-issuance conduct: "*To willfully infringe a patent, the patent must exist and one must have knowledge of it. Whether an act is willful is a question of the actor's intent, the answer to which must be inferred from all the circumstances. Since the Asserted Patents did not exist until December 31, 2013 (and later), your focus should be on PPG's intent and actions from that date forward.*"

Sherwin does not object to the content of this instruction and recognizes that it correctly states that willfulness must be inferred from all the circumstances. Sherwin, however, objects to the ordering of sentences as misleading the jury into believing that only circumstances after December 31, 2013 should be considered. Sherwin proposes moving the last sentence of the special master's proposal to the next paragraph. PPG opposes Sherwin's modifications.

The court concludes that the special master's proposal is appropriate and consistent with the court's prior rulings. The instruction clearly states that the jury can consider "all the circumstances" while properly focusing the jury on PPG's conduct after the Asserted Patents existed. The wordsmithing suggested by Sherwin is not necessary and would make the instructions less readable. This aspect of R&R #90 will be adopted.

3.   "Subject matter" or "product"

Both parties proposed an instruction about intentional copying as a factor. PPG proposed: "*Whether or not PPG intentionally copied a product of Sherwin that is covered by the Asserted Patents.*" Sherwin proposed: "*Whether or not PPG intentionally copied the subject matter claimed by the Asserted Patents.*"

14

The special master recommends that neither instruction be given.  The special master reasoned that there was no evidence that PPG copied a product of Sherwin, and that the model instructions do not support an instruction about copying "subject matter."  The special master also concluded that Sherwin's proposal was unnecessary in light of the other instructions.

Sherwin contends that its proposal is an appropriate modification of the model instructions to fit the facts of this case.  Sherwin also contends that the proposal is necessary to explicitly inform the jury that it can consider the copying evidence.  PPG argues that Sherwin's proposal is improper as a matter of law because the willfulness inquiry focuses on the copying of a product; every finding of infringement does not support willfulness.  PPG also argues that Sherwin's proposal would place undue emphasis on pre-issuance activity, which is properly considered only in a background context.

The court agrees with the special master's recommendation.  Sherwin's proposal is not necessary in light of the other instructions on willfulness and would introduce unnecessary confusion about copying the "subject matter" of the patents.  This aspect of R&R #990 will be adopted.

4.   Phase I evidence

Sherwin proposed a lengthy instruction about how the jury should consider in Phase II the copying evidence introduced in Phase I.  The special master recommended that Sherwin's proposal be edited as follows:  "*During the first phase of trial you heard evidence from Sherwin pointing to actions taken by PPG before the issuance of the Asserted Patents in support of Sherwin's argument that PPG copied the patented technology.  As a matter of law, evidence of PPG's copying occurring before the issuance of the Asserted Patents cannot in [sic] constitute*

2:17-cv-01023-JFC   Document 1019   Filed 12/01/21   Page 16 of 18

*evidence of a willful violation of the Asserted Patents, which were not issued until December 31,*

*2013, or later.  But you may consider evidence that you heard at trial regarding PPG's actions*

*in 2014 and subsequent years as to the issue of willful violation of patents.*"

Sherwin contends: (1) the typographical error should be corrected by inserting the word

"itself"; and (2) the instruction omits any reference to the jury's ability to consider the copying

evidence as part of the totality of circumstances.  Sherwin's original proposal would replace the

last sentence of the special master's recommendation with:  "*But what can be considered*

*relevant to willfulness is PPG's decision to continue marketing Innovel in 2014 and subsequent*

*years despite its awareness of the Asserted Patents.  In other words, the focus should not be on*

*the original copying, but on PPG's decision to continue marketing Innovel.  Therefore while not*

*itself dispositive on the issue of willfulness, evidence of PPG's copying occurring before the*

*issuance of the Asserted Patents can be considered as part of the totality of the circumstances*

*when determining whether PPG's infringement was willful.*" (ECF No. 990 at 24-25).[4]  PPG

argues that this instruction is unnecessary and draws undue attention to the pre-2013 copying.

The court agrees that the typographical error should be corrected by inserting the word

"itself."  The court concludes that Sherwin's suggested language at the end of the instruction

should be substituted for the last sentence in the special master's proposal, as modified below.

Sherwin's proposal is consistent with the court's prior orders and clarifies for the jury that PPG's

pre-issuance conduct is not the focus, but can be properly considered as part of the background

context.  The remainder of the special master's proposal explains that as a matter of law, the pre-

issuance copying cannot in itself constitute willfulness.  That aspect of R&R #990 will be

adopted, as supplemented herein.  The instruction will read as follows:

---

[4] Sherwin suggested other modifications to this instruction in its objections (ECF No. 998 at 13).  The court
concludes that Sherwin's most recent modifications will not be adopted.

**During the first phase of trial, you heard evidence from Sherwin pointing to actions taken by PPG before the issuance of the Asserted Patents in support of Sherwin's argument that PPG copied the patented technology.  As a matter of law, evidence of PPG's copying occurring before the issuance of the Asserted Patents cannot in itself constitute evidence of a willful violation of the Asserted Patents, which were not issued until December 31, 2013, or later.  But what can be considered relevant to willfulness is PPG's conduct in 2014 and subsequent years despite its awareness of the Asserted Patents.  In other words, the focus should not be on the original copying, but on PPG's conduct in 2014 and thereafter.  Therefore, while not itself dispositive on the issue of willfulness, evidence of PPG's copying occurring before the issuance of the Asserted Patents can be considered as part of the totality of the circumstances when determining whether PPG's infringement was willful.**

H.  Phase II verdict slip

There is one remaining dispute about the Phase II verdict slip.  PPG contended that the verdict slip should have separate questions for pre-verdict royalties and post-verdict royalties.  The special master suggested a compromise:

> *Question #4:  What royalty per gallon and total royalty amount, for those damages not compensated by lost profits (if any) do you determine to be a reasonable royalty amount to compensate Sherwin-Williams for infringement?*
>
> *Royalty Amount: _____ per gallon*
>
> *Total Reasonable Royalty Damages: $_____*

(ECF No. 990 at 27).

PPG suggests one further clarification, to ensure that the jury awards total royalty damages only for past infringement.  PPG proposes that the last line read as follows:

> *Total Reasonable Royalty Damages for past infringement: $_____*

The court concludes that this clarification is appropriate.  It is undisputed that the same royalty amount per gallon will apply to past and future infringement.  Both sides' experts have opined on the applicable royalty rate per gallon.  There is no need to distinguish between a past

17

and future royalty amount per gallon.[5] The total amount of royalty damages for past infringement will be determined by the jury based on the total number of gallons involved, and the amount of lost profits.  Future royalty damages, however, will be determined by the court, not the jury.  The modification clarifies that the jury will not calculate a dollar amount for future royalty damages.

Conclusion

In summary, the special master's R&R #990 will be adopted in part as the opinion of the court, as modified and supplemented above.  The parties shall meet and confer and incorporate: (1) the rulings in this decision; (2) the recommendations of the special master to which they did not object; and (3) the disputes which the parties resolved, into the final proposed jury instructions and verdict slips that will be delivered to the jury, to be filed by the parties on or before December 17, 2021.

An appropriate order will be entered.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

Dated:  December 1, 2021

---

[5] The court will not adopt PPG's proposal that "past and future" be inserted into the last phrase of question 4.