IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE SHERWIN-WILLIAMS COMPANY, | ) | CIVIL ACTION NO. 17-1023 |
| | ) | |
| Plaintiff/Counterclaim-defendant, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**OPINION**

Pending before the court is a motion for clarification (ECF No. 1007) filed by The Sherwin-Williams Co. ("Sherwin" or "SW"). PPG filed a response in opposition (ECF No. 1015) and the motion is ripe for disposition.

Sherwin seeks clarification about a statement made by the court in its October 27, 2021 opinion (ECF No. 996), in connection with the court's denial of SW MIL #15. In SW MIL #15, Sherwin sought to preclude PPG's damages expert, Michael Milani ("Milani"), from referencing the "Exemplary Perez Coating" in his damages opinions. PPG responded that it will not reference the "Exemplary Perez Coating," but Milani will opine about the existence of the Perez Patent and Prop 65 as factors in the hypothetical negotiation of a reasonable royalty.

The court denied SW MIL #15, characterized it as a semantic dispute, and observed that both parties cited to the court's prior rulings. (*Compare* ECF No. 530 at 17 *with* ECF No. 636 at 11-12). The court reasoned as followed:

> As the special master correctly explained, the court has made a distinction between the "Exemplary Perez Coating" and the teachings of the Perez Patent. The

>"Exemplary Perez Coating" was a specific coating created by PPG's technical expert, Dr. Robson Storey, "for the specific purpose of demonstrating his opinion that a coating based on the Perez patent would inherently meet the testing limitations." (ECF No. 530 at 11). The parties agreed that the Exemplary Perez Coating did not exist in the market during the original damages period and the court in granting Sherwin's summary judgment motion held that the Exemplary Perez Coating was not a non-infringing alternative product (ECF Nos. 530, 864).
>
>The court's ruling about that specific product – which was created during the litigation for technical purposes -- does not preclude PPG from relying on the existence of the underlying Perez Patent itself in its damages analysis. To the contrary, the court specifically explained that Milani's reasonable royalty opinions "that Sherwin's patent did not provide any economic benefit over the disclosures of the Perez Patent, and that the value of both PPG's and Sherwin's products was driven by the Prop 65 regulation" had not been challenged by Sherwin, were supported by the record, and would be admissible. (ECF No. 636 at 11-12). Sherwin did not provide a persuasive reason for the court to reconsider that decision.
>
>**Milani will be permitted to opine, in essence, that rather than paying Sherwin a royalty, PPG could have chosen to develop a non-infringing product based on the Perez Patent.** Sherwin will have an opportunity to subject that opinion to vigorous cross-examination. In sum, SW MIL #15 will be denied.

(ECF No. 996 at 6) (emphasis added). The court also held that Sherwin's challenges to the references in Milani's supplemental report to the Perez Patent as a basis for his reasonable royalty opinions would be denied for the same reasons. (ECF No. 996 at 7).

Sherwin seeks clarification and confirmation that the court's ruling does not alter its summary judgment ruling, which stated, in pertinent part (with appropriate context):

>Sherwin Williams sufficiently showed "the negative," i.e., no other products existed in the market, through its interrogatory to PPG and deposition questions to PPG's corporate designee. Vague references by PPG that an Akzo product might exist will not suffice. ECF No. 398 ¶¶ 24-44. **Speculation that PPG might have been able to design a non-infringing alternative based on the Perez patent will also not suffice.** ECF No. 398 ¶¶ 46-47. It is undisputed that the Exemplary Perez Coating was never commercialized.

(ECF No. 530 at 16). Sherwin agrees that Milani can opine about the limited differences between the four corners of the Perez patent and the Asserted Patents. (ECF No. 1008 at 1, 6).

2

The court adheres to its summary judgment decision.  The issue at summary judgment was whether a non-infringing alternative product existed in the market.  (*See* ECF No. 371).  The court concluded that there was no evidence of such a product and reasoned as follows:

> Because there is insufficient evidence for a reasonable jury to find that the Akzo product or Exemplary Perez Coating were in the market during the damages period, it would be improper to refer to either product as a basis to calculate lost profits or a reasonable royalty.

(ECF No. 530 at 17).  The court noted that its summary judgment ruling with respect to no non-infringing alternative products was not intended to resolve the *Daubert* challenges that both sides filed against the opposing damages experts.  *Id.*

To the extent that Sherwin seeks to extrapolate that holding to preclude PPG from relying on *any* hypothetical coating based on the Perez patent in the damages phase of trial (ECF No. 1008 at 1) (emphasis in original), the court is not persuaded.  The court's summary judgment ruling was not intended, and cannot be reasonably interpreted, to preclude the entirety of Milani's opinions about the Perez patent as it relates to the *Georgia-Pacific* factors.  It simply prevented PPG from inviting the jury to speculate that a non-infringing alternative product existed in the market (during the initial damages period) when determining lost profits or a reasonable royalty.

In its summary judgment decision, the court recognized that the "reasonable royalty" calculation necessarily involves some imprecision because it is determined by constructing a hypothetical negotiation.   (ECF No. 530 at 17) (citing *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009)).  The court also recognized:  "There may be multiple acceptable methodologies.  *Id*.  As the special master explained, both experts purported to apply the *Georgia Pacific* factors and the jury should determine which expert's application of those factors is more persuasive."  (ECF No. 636 at 10).

3

In his initial expert report's reasonable royalty opinion, Milani stated:

> A licensing negotiation is often the process of two parties determining the best way to share any gains from the utilization of a particular technology. The licensor is entitled to compensation for the benefits afforded by the intellectual property, while the licensee must be compensated for the business risks of providing the product. Once the value of the asset is estimated, then that value can be shared via a royalty. In all cases it is necessary to apportion the value of the patented feature from the non-patented features, or any other contributions which are unrelated to the Asserted Patents. As discussed previously, I understand that, at the time of the issuance of the Asserted Patents, BPA-NI coatings were known. More specifically, I understand the Perez Patent discloses BPA-NI sprays and, assuming it does not represent prior art which invalidates the Asserted Patents, any differences between the Perez Patent and the Asserted Patents would be limited and immaterial to the overall performance of the Innovel Product. Therefore, I consider the Asserted Patents to provide a limited contribution over the prior art.

(ECF No. 428-1 at 80).[1]

In its earlier *Daubert* opinion, the court concluded that Milani would not be permitted to testify that profits should be apportioned 50% to reflect the value of nonpatented features of Innovel, such as a high glass transition temperature, because he provided no quantification for that apportionment. (ECF No. 636 at 10-11). The court explained that Milani would be permitted to offer his other opinions about the impact of the Perez patent on a reasonable royalty, to which Sherwin did not object:

> To be clear, the exclusion of the "apportionment of benefits" testimony does not apply to the alternative bases for Milani's reasonable royalty opinion – namely, that Sherwin's patent did not provide any economic benefit over the disclosures of the Perez Patent, and that the value of both PPG's and Sherwin's products was driven by the Prop 65 regulation. Milani Report at 79-80. These opinions are not directly challenged by Sherwin (ECF No. 604 at 3-8) and are supported by the

---

[1] Milani opined in the lost profits section of his initial report: "it is reasonable to consider that PPG could have developed a commercially successful inside spray based on the Perez Patent, like Innovel, but with a different formulation as compared to Innovel. That said, because I do not have adequate information to directly account for the nature and timing of this alternative, it is not explicitly factored into my lost profit analysis." (ECF No. 428-1 at 51). Milani will not be permitted to offer an opinion quantifying that rationale. The court's statement in ECF No. 996 was not intended to alter that decision or permit Milani to offer an opinion he had disavowed.

4

>record.  If the court reaches the damages phase, the jury will have necessarily rejected PPG's position that the Perez Patent renders the Asserted Patents invalid. The jury can nevertheless consider Milani's opinions about the existence of the Perez Patent and Prop 65 as factors in the hypothetical negotiation of a reasonable royalty.

(ECF No. 636 at 11-12).  The fact that PPG did not develop a commercial product based on the Perez patent, therefore, does not preclude the existence of the Perez patent as a factor in the hypothetical negotiation.  In the October 27, 2021 opinion, the court specifically held that Milani could offer the apportionment opinion that the Asserted Patents provide a de minimis contribution to the profits generated by Innovel (provided PPG establishes a proper foundation for that opinion).  (ECF No. 996 at 8).  As noted, Sherwin recognizes that Milani can offer that opinion (ECF No. 1008 at 6).

Conclusion

Sherwin's request for clarification will be granted in part, as explained above.  There is a tension between (1) preventing the jury from speculating about products that did not exist in the market; and (2) allowing the damages experts some latitude to opine about the factors that might influence a hypothetical royalty negotiation.  The court adheres to its prior decisions, which tried to address these competing concerns.  Milani will be permitted to opine about the existence of the Perez patent as it impacts his *Georgia-Pacific* analysis about the economic value of the Asserted Patents over the prior art.  Milani will not be permitted to opine that a product based on the Perez patent ever existed.

An appropriate order will be entered.

Dated:  December 1, 2021

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge