IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY, ) | CIVIL ACTION NO. 17-1023 |
| ) | |
| Plaintiff/Counterclaim-defendant, ) | JUDGE JOY FLOWERS CONTI |
| ) | |
| ) | |
| ) | |
| v. ) | |
| ) | |
| PPG INDUSTRIES, INC., ) | |
| ) | |
| Defendant/Counterclaimant. ) | |

**OPINION**

I. Introduction

Pending before the court in this contentious patent infringement case are objections to the special master's report and recommendation ("R&R") about "high priority" exhibit disputes (ECF No. 1011). The parties represented that the R&R would also resolve related disputes about deposition designations.

The parties and special master have worked diligently to resolve or narrow the disputes, although there are hundreds of exhibits listed and the parties have not yet finalized the exhibits that will actually be introduced at trial. The most recent recitation of disputes is at ECF Nos. 1000 and 1001.

The special master conducted an oral argument on November 3, 2021. The court reviewed a transcript of the argument (ECF No. 1016). The court conducted a short telephone conference with lead counsel from both sides and the special master on December 16, 2021. The parties had ample notice and opportunity to be heard. PPG's objections to R&R #1011 are fully briefed (ECF Nos. 1022, 1029, filed under seal) and are ripe for disposition. The objections will

be reviewed de novo.  Fed. R. Civ. P. 53(f)(1).

Discussion

Sherwin did not object to R&R #1011.  PPG raised the following objections to R&R #1011: (1) exhibits about PPG's alleged copying; (2) exhibits about Sherwin's alleged copying; and (3) Akzo exhibits.  The court will address each topic.

As an initial matter, the court observes that the term "copying" creates confusion.  In Phase I of the trial (invalidity), evidence that PPG "copied" Example 7 of a parent patent and other circumstantial evidence of "copying" will be admissible with respect to the secondary consideration of non-obviousness.  The court recognized PPG's argument that its conduct was "synthesizing," not "copying," but held that whether PPG "copied" or "synthesized" is an issue of fact to be resolved by the jury.  (ECF No. 780 at 3).  No evidence about Sherwin's alleged "copying" or "synthesizing" will be admissible in Phase I because Sherwin's conduct is irrelevant to the invalidity issues in Phase I.  (ECF No. 1019 at 11-12).

Phase II of the trial will address willfulness and damages.  Willfulness implicates PPG's state of mind and is determined based on the totality of the circumstances (ECF No. 1019 at 12). Two of the willfulness factors set forth in the Federal Circuit Model Jury Instructions arguably implicate "copying" under the circumstances of this case:

(1) Whether or not [alleged infringer] acted consistently with the standards of behavior for its industry; and

(2) Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the patent.

Federal Circuit Model Instruction 3.10 (Willful Infringement).

In Phase II, Sherwin will be permitted to argue that the evidence introduced in Phase I about PPG's alleged intentional "copying" of Example 7 is part of the background that the jury can consider in determining willfulness, although the jury will be instructed that its focus must be on PPG's conduct after the Asserted Patents[1] existed (ECF No. 1019 at 14).  PPG is not arguing, and will not be permitted to argue, that because Sherwin intentionally "copied" PPG's patents, PPG would not be willful if it intentionally copied Sherwin's patents.  Instead, as the court understands PPG's position, PPG denies that it "copied" Sherwin's patents and contends that its activities constituted research and investigation of Sherwin's patents, i.e., "synthesizing," which are consistent with standards in the industry.  In its opinion with respect to jury instructions, the court determined that expert testimony about industry practices was not essential, but took the issue of "standards in the industry" under advisement (ECF No. 1019 at 13).[2]  With that overview, the court turns to PPG's specific objections to R&R #1011.

1. PPG's "copying"

The special master recommended that PPG's objections to the 14 exhibits that were itemized in PPG MIL #1 about non-technical copying evidence (ECF No. 575) (which the court denied, ECF No. 780) be denied as law of the case.  The special master recommended that PPG's objections to the remaining exhibits be reserved for decision at trial.

PPG raises several arguments:  (1) the challenged exhibits are not relevant in Phase I to show that PPG copied a feature of Sherwin's product; (2) the references to Dan Rardon

---

[1] The term "Asserted Patents" is defined in ECF No. 1019 at 11 n.1.
[2] Sherwin agrees with the court's decision that expert testimony is not necessary to establish this factor. (ECF No. 1026 at 10) (citing *In re Taneja*, 743 F.3d 423, 431 (4th Cir. 2014) ("we decline to hold that a defendant asserting a good-faith defense must present third-party expert testimony in order to establish prevailing industry standards")).

("Rardon") violate the court's ruling on PPG MIL #2; and (3) the case significantly changed when the court ruled that Sherwin cannot contradict its representation to the USPTO that the Perez Patent[3] discloses a BPA-free coating (ECF No. 859). PPG also contends that it should retain the right to object at trial to exhibits as duplicative and cumulative.

The court disagrees with the special master in part. The court's opinion and order with respect to PPG MIL #1 (ECF Nos. 779, 780) are not dispositive of the pending disputes. The court did not make a document-by-document examination and did not make a final determination that any specific document (let alone all potential non-technical copying or synthesizing evidence documents) would be admissible at trial. Instead, the court and special master resolved the parties' disputes in PPG MIL #1 about the legal principles governing non-technical copying evidence in general. (*See* R&R, ECF No. 631 at 6) ("Because this **type** of evidence is relevant and has been deemed allowable by the Federal Circuit in the *Liqwd* case, it should be allowed.") (emphasis added); (ECF No. 780 at 2) ("The special master concluded that *Liqwd, Inc. v. L'Oreal USA, Inc*., 941 F.3d 1133, 1138 (Fed. Cir. 2019), was the controlling authority and was not persuaded by PPG's reliance on *Iron Grip Barbell Co. v. USA Sports, Inc*., 392 F.3d 1317, 1325 (Fed. Cir. 2004), for the proposition that copying requires the replication of a specific product."). The court's decision with respect to PPG MIL #1 does not preclude PPG from raising objections at trial to specific exhibits as irrelevant, duplicative or cumulative.

The court's ruling with respect to PPG MIL #2 similarly does not resolve the pending disputes. PPG MIL #2 was focused on an exchange of letters in January 2005 between in-house counsel for Sherwin and PPG about Rardon's confidentiality obligations to Sherwin (the "Rardon Letters"). The court held that the Rardon Letters will not be admissible in either phase

---

[3] The term "Perez Patent" is defined in ECF No. 1025 at 2.

of trial. (ECF No. 780 at 5). Sherwin will not be permitted to invite the jury to speculate that Rardon acted improperly in violation of his confidentiality obligations. That ruling does not preclude all references to Rardon. To the contrary, the court explained that evidence about his confidentiality obligations was "in contrast to evidence about what Rardon actually did to assist the PPG effort." (ECF No. 780 at 5).

The court's ruling on January 21, 2021, that "Sherwin is bound by the position it took at the USPTO that Perez discloses a BPA-free coating" (ECF No. 859 at 5), also does not resolve the pending disputes. That ruling did not involve PPG MIL #1, non-technical copying or synthesizing evidence, or disputes about specific exhibits or deposition designations. At no time (prior to the pending objections) did PPG ask the court to reconsider its decision on PPG MIL #1 in light of the supposed "significant change" caused by the ruling on Sherwin's representation to the USPTO.

In short, the court's prior rulings about the legal issues disputed by the parties at that time do not fully resolve the parties' pending disputes about the admissibility of specific documents into evidence at trial. There was, and will be, no categorical ruling by the court on admissibility or exclusion of all exhibits involving non-technical copying or synthesizing evidence. It will be incumbent on the party seeking to introduce an exhibit at trial (if challenged) to lay a proper foundation for its admissibility.

The parties should continue to work to resolve all such disputes prior to trial (with the assistance of the special master). To aide their discussions, it is difficult to perceive how documents about setting up a Sharepoint site (*see, e.g.*, PTX 21) would be relevant to the issues at trial; the mere fact that Rardon was on the distribution list does not support an inference that Rardon or PPG engaged in actual copying conduct. On the other hand, circumstantial evidence

about PPG's copying of the Asserted Patents may be admissible even if it is not tied to the specific novel feature of being BPA-free.  As the court understands Sherwin's position, whether or not the Perez patent discloses a BPA-free coating, PPG decided to copy Sherwin's Asserted Patents instead of developing a coating based on the Perez technology.  Exhibits showing that PPG had to catch up in the marketplace (*see, e.g.,* PTX 44), and therefore had an incentive to copy the Asserted Patents, may be admissible as circumstantial evidence.  That evidence may open the door for PPG to introduce circumstantial evidence that it did not copy Sherwin's patents (*see, e.g.*, DX 208, discussed below).

In sum, this aspect of R&R #1011 is adopted in part (with respect to the reservation of challenges to specific documents at trial, as supplemented above) and denied in part (with respect to the preclusive effect of the court's ruling on PPG MIL #1).

2. Sherwin's "copying"

PPG seeks to introduce evidence relating to Sherwin's "sampling, recreating and monitoring" of competitor products to rebut the allegation of willful infringement.  The special master recommended that Sherwin's objections be granted unless PPG can show that Sherwin copied features from PPG's BPA-NI inside spray can coating (ECF No. 1011 at 7).[4]

PPG represents that it can make the factual proffer required by the special master, i.e., that Sherwin analyzed and tested PPG's BPA-NI inside spray, which the court understands to include "synthesizing," and sought to incorporate those features into its own product.  PPG argues, more broadly, that the evidence at issue is relevant to the willfulness factor about whether the infringing party "acted consistently with the standards of behavior for its industry."

---

[4] Because the special master's R&R was issued prior to the court's decision on the related disputes about jury instructions (ECF No. 1019 at 11-13), the special master did not have the benefit of that decision.

*See* Federal Circuit Model Instruction 3.10.  PPG contends: (1) it did not "copy" the Asserted Patents, but instead examined, synthesized, prepared samples and otherwise studied them, i.e., "synthesizing" conduct; and (2) those activities were consistent with those of other companies in the industry, including Sherwin.  Sherwin disagrees, and contends that PPG's activities did constitute copying and were different from what Sherwin did.  In Phase II, PPG will have an opportunity to demonstrate that it was not willful because its activities were consistent with standards of behavior in its industry.[5]  Sherwin will have the opportunity to show that PPG's "copying" was different than Sherwin's "synthesizing."  Whether Sherwin "copied" or "sampled, recreated and monitored" (like whether PPG "copied" or "synthesized") is a question of fact for the jury.  The jury can determine what weight, if any, to give this evidence in determining whether PPG was willful.

       The parties dispute how the relevant "industry" should be defined.  On December 16, 2021, the court instructed counsel to meet and confer to attempt to resolve that dispute.  In the absence of an agreement, it may be an issue of fact for the jury to resolve what the relevant industry is in this context.  A proper foundation must be laid before a witness may testify about the issue of the relevant industry.  *See* Fed. R. Evid. 701.

       Finally, PPG argues that exhibit DX-28 should be offered for a different purpose; namely, the role of glycidyl methacrylate ("GMA") in the Asserted Claims.  Sherwin did not rebut the assertion that DX-28 may be admissible for another purpose.  The parties should confer about whether this dispute may be resolved by appropriate redaction.  *See* ECF No. 995.

       The parts of R&R #1011 which address the copying, synthesizing and industry standards, as well as the admissibility of exhibit DX-28, are not adopted for the reasons set forth above.  In

---

[5] As this court has reiterated, PPG will not be permitted to introduce evidence about Sherwin's alleged copying activities in Phase I because Sherwin's conduct is irrelevant to the invalidity issues (ECF No. 1019 at 11-12).

order to avoid confusing the jury, the parties should avoid characterizing "synthesizing" evidence as "copying" evidence, and vice versa.

      3.  Akzo

In Phase II, Sherwin seeks to exclude 87 exhibits that discuss the presence of an Akzo product during the initial damages period (pre-Q2 2018). The court held that PPG may not refer to the Akzo product as a basis to calculate lost profits or a reasonable royalty in the initial damages period. PPG represents that it will not use any of the challenged exhibits to demonstrate the existence of an Akzo product in violation of the court's orders; contends that the exhibits are admissible for another purpose; and offers to redact the Akzo references. PPG also argues that blanket exclusion is premature because Sherwin may open the door to such evidence.

The special master was not convinced that the challenged exhibits are relevant in either phase of trial. The special master recommends that Sherwin's objections to these exhibits be sustained, subject to PPG's ability to make a proffer on individual exhibits during Phase II. The special master noted PPG's redaction offer, but did not discuss its impact on admissibility.

The court cannot rule on all 87 documents in advance of trial. PPG will have an opportunity to make a proffer, outside the presence of the jury, on the admissibility of individual exhibits during each phase of trial. Redaction of the Akzo references may help to satisfy concerns about violating the court's orders about the initial damages period; provided, the redactions do not lead to the possibility of confusion for the jury.

The special master specifically discussed one document (DX 208) in this part of the R&R (*see* R&R #1011 at 12; Tr. at 73-79). PPG contends the document is relevant to rebut Sherwin's claim that Sherwin had a monopoly on how to make BPA-free can coatings. The document may also be relevant in Phase I to rebut an inference of the secondary consideration of copying – if

PPG simply copied Sherwin's product, one would expect the performance of each product to be indistinguishable in the market. In other words, this document provides circumstantial evidence that PPG did not copy Sherwin's patents because a jury could infer that if customers liked Innovel better, it must be different. A final ruling on admissibility must wait to be determined based upon the full context of evidence introduced during trial.

In summary, this aspect of R&R #1011 will be adopted in part and denied in part. PPG will have the opportunity to proffer the admissibility of individual exhibits (with Akzo references redacted, subject to challenged based upon the possibility of confusing the jury) at both phases of trial.

Conclusion

In summary, the special master's R&R #1011 will be adopted in part as the opinion of the court, as modified and supplemented above, and denied in part. The court endeavored to resolve as many disputes as possible prior to trial, but recognizes that some disputes may be context-dependent and require resolution at trial. The parties shall continue to meet and confer to resolve their remaining disputes about exhibits and deposition designations, including their disputes about demonstrative exhibits (ECF No. 1011 at 13). The parties' joint set of exhibits shall be submitted by the parties no later than December 29, 2021 (*see* ECF No. 1024). The parties are reminded that evidence admitted at trial will not be sealed.

An appropriate order will be entered.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

Dated: December 21, 2021